STELLA FLOUR & FEED CORP., Respondent, *v.* NATIONAL CITY BANK OF NEW YORK, Appellant.

First Department, December 21, 1954.

*Charles C. Parlin, Jr.,* of counsel (*Herman E. Compter* with him on the brief; *Shearman & Sterling & Wright,* attorneys), for appellant.

*Henry E. Otto* of counsel (*Otto & Easterday,* attorneys), for respondent.

BERGAN, J. Plaintiff was a depositor with the defendant bank and the question presented by this appeal is the extent to which a bank may incur a tort liability if it breaches its contract obligation to charge drafts against an account only in accordance with a depositor's directions.

The complaint alleges that plaintiff issued four checks drawn on the defendant bank in the total amount of $11,241.67; that each was drawn in favor of a specific payee; that an employee of plaintiff altered the checks by changing the named payee thereon; and that after alteration the defendant paid the said employee of plaintiff the amount of such checks and deducted the amounts from plaintiff's account.

The portions of the complaint resting on contract are not challenged here and follow the usual pattern in the statement of causes of action based on a balance due and on the general responsibility of the bank to its depositor for making payment on materially altered or forged checks drawn upon it.

The third cause of action, which has been sustained at Special Term, sounding in tort, pleads a " duty " arising from the depositor-banker relationship " to use active vigilance " in paying checks drawn by the plaintiff on the bank " to protect plaintiff from larceny and forgery " and to use " sound and proper banking procedure " in paying plaintiff's checks drawn on it; and it is alleged that the defendant bank " negligently and carelessly omitted and failed to use any vigilance, care or diligence " in paying the checks specified and that payments were not made in accordance with sound banking practice.

The acts of negligence as set forth may be summarized by saying that they consist of failing to " properly examine " the checks before paying them and failing to " discover " the alterations and changes made on the checks. Other specifications of " negligence " seem to be stated in the form of breaches of contract, such as negligence " in failing to pay said checks in accordance with the directions of plaintiff " and " in failing to pay the proceeds " of the checks to the payees or their transferees.

Besides the damage which would flow directly from the payment of the checks as a result of the forgeries and the debiting of plaintiff's account in the sum of $11,241.67, it is alleged that as a result of the "negligence " involved in the payments, plaintiff's credit and business have been injured additionally by the resulting reduction of its bank balance in the account with defendant and that it has suffered loss in the sum of $30,000 beyond the amount of the checks themselves.

We are of opinion no cause of action grounded on tort under the facts pleaded arises separately and beyond the obligations contract which governs the depositor-banker relations of the parties. If a man negligently breaches his contract he will usually be answerable on the contract and not in tort. The

theory of tort liability may be discovered to overrun into breaches of contract in a very limited area; but the payment charged to a depositor's account by a bank on forged or altered drafts certainly does not come within that area.

A high standard of contractual responsibility has been imposed on banks in paying money chargeable against their depositors' accounts; and where there have been forgeries or alterations in drafts or checks it has been a long and consistent judicial policy in New York to require the bank to assume the loss. This has been so even in cases where the depositor's own employee, as here, made the alterations and obtained the money. An early statement of this policy was announced a century ago in *Weisser* v. *Denison* (10 N. Y. 68 [1854]), where the depositor's clerk committed the forgeries.

But if to this old and well-settled rule of high contractual responsibility we were now to add a responsibility in tort for a bank's failure to discover the forgeries of the depositor's employee and require the bank to pay consequential damages besides making good the amounts paid out on the forged paper, we would push a banker's responsibility to a point far beyond the area in which the banking and commercial community have been led to believe that responsibility ended.

Since the term " negligence " does appear in judicial opinions addressed to the obligations of a depositor whose account has been charged by a bank with forged or altered drafts; and since it appears also in relation to the obligations of banks arising from payment of such drafts; and since plaintiff's argument to sustain this pleading rests on quotations from opinions, it will be helpful to examine the context of this use, and the place " negligence " occupies in the depositor-banker relation.

The basic obligation of the bank to its depositor is that of " debtor and creditor " and " the law implies a contract " by the bank to disburse the money standing to the depositor's credit only upon his order. (*Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 318, 327.) " Payments made upon forged indorsements are at the peril of the bank unless it can claim protection upon some principle of estoppel or by reason of some negligence chargeable to the depositor."

The general rule is that when payment has been made by a bank on forged paper " it is considered that the bank has paid out its own funds rather than those of the drawer." (9 C. J. S., Banks and Bankings, § 356, subd. c., par. [1].) As to the depositor it has been said that " a forged check is not paid, for it is

paid upon a pretended order  \*  \*  \*  and thus the debt of the bank to the depositor is unaffected." (*Parker-Smith* v. *Prince Mfg. Co.*, 172 App. Div. 302, 305.)

What is meant by " negligence chargeable to the depositor " is to be observed where conditions have been created or allowed by the depositor which greatly facilitate the deception imposed on the bank; or where a delay in examining the returned vouchers or accounts and communicating the wrongful use of the drafts to the bank has occurred which materially affects the bank's ability to recoup the loss. In either event the term " negligence " thus used largely rests on a theory of estoppel or preclusion against the depositor from asserting a right to have a contractual obligation performed. This, of course, must be seen in the background of the heavy contractual obligation that has been imposed on the bank.

Where there has been a negligent omission by a depositor to examine the accounts of a bank sent him periodically and this results in a failure after the lapse of a reasonable time, and to the bank's disadvantage, to call attention of the bank to an irregularity, the court may " preclude the depositor from afterward questioning its correctness." (*Frank* v. *Chemical Nat. Bank of N. Y.*, 84 N. Y. 209, 213.)

The time limit within which a report of a payment on forged paper must be made by the depositor to the bank is now codified (Negotiable Instruments Law, § 326), after which time the bank is no longer to be liable to the depositor. (See discussion by CONWAY, J. in *Maryland Cas. Co.* v. *Central Trust Co.*, 297 N. Y. 294, 302, 303.) The theory of negligence of the depositor in this situation is that he may have " lulled the drawee bank into relaxing the vigilance it should have exercised in guarding against forged endorsements." (*Fitzgibbons Boiler Co.* v. *National City Bank,* 287 N. Y. 326, 331.)

Through all this it is to be seen that the use of " negligence " and " estoppel " attributed to a depositor is directed toward describing the conditions under which a bank may be allowed to escape the full weight of its contractual undertaking to pay out the money on deposit with it only in accordance with the depositor's order. A phrase in the opinion of CHASE, J., in *Prudential Ins. Co.* v. *National Bank of Commerce* (227 N. Y. 510, 523), illustrates rather pointedly that in underlying theory we are certainly not here dealing with tort. " It is permitted to a bank to escape liability for repayment of amount paid out on forged checks by establishing that the depositor has been

guilty of negligence which contributed to such payment and that it has been free from any negligence." The liability thus escaped, of course, is a contractual liability.

We are thus led back to what, in turn, is meant by " negligence " of the bank in paying upon a forged check. It becomes quite apparent that this " negligence " is not an independent tort arising separately from the contract obligation to pay only in accordance with the depositor's order. The bank is permitted " to escape liability " in contract. This would mean that a recovery in contract follows as a matter of course unless the careless acts of the depositor are so effective in the contractual situation as to prevent the depositor from insisting on exact and full performance of the contract; but, even then, he can recover from the bank upon his contract if the bank, too, was careless so that the effect of the depositor's carelessness was offset. The negligence of the bank is thus treated as a counterweight against the avoidance of a contract, and not the basis for a new and a separate liability resting on tort beyond the contract. (*Welsh* v. *German Amer. Bank,* 73 N. Y. 424, 429; *Weisser* v. *Denison,* 10 N. Y. 68, *supra,* concurring opinion, JOHNSON, J., p. 83.)

The rule gathered from many cases was drawn together into close-knit cohesion by POUND, J., in 1929 in *Gutfreund* v. *East Riv. Nat. Bank* (251 N. Y. 58). There the depositor issued checks carelessly with the names of the payees so written as easily to facilitate forgery. The action was by the depositor against his bank which had paid forged checks thus facilitated.

The court was of opinion that the checks were drawn, or it might be found as a fact that they were drawn " in a negligent and unbusinesslike manner " (p. 64). But the bank also was " negligent " in not questioning the right of the person to whom the payments were made under the circumstances in which these checks were presented. The bank is bound " by contractual obligation to the exercise of due care in the payment of checks " bearing the signatures of its depositors. " Its negligence defeats the defense of negligence on the part of the depositor " (p. 64).

It is thus to be seen in the context of the decisional law in New York what Chief Judge RUGER meant in *Crawford* v. *West Side Bank* (100 N. Y. 50, 54), in referring to the liability of the bank " for any want of vigilance " in detecting an alteration of a draft after its issue, upon which so largely rests the third cause of action here pleaded and the argument of the plaintiff. He was referring, as the opinion clearly shows, to a liability in contract; for the judgment was, merely, that the bank could

not charge the disputed check to the depositor's account (p. 58).

There are, however, objections to the third cause of action which go deeper into the substructure of tort liability than mere incidents of the depositor-banker relationship. Torts have been defined generally as " wrongs independent of contract " and " wholly irrespective of contract ". (62 C. J., Torts [§ 3] b.) " To constitute a tort, the act or commission must be entirely independent of contract right." (*Clark* v. *Gates,* 84 Minn. 381, 383.)

There is a discussion of the problem by Judge FINCH in *Rich* v. *New York Central & Hudson Riv. R. R. Co.* (87 N. Y. 382), who observed that the violation of duty involved in tort is a " thing different from the mere contract obligation " (p. 390). It was conceded there, however, that the complaint properly states a cause of action in tort (p. 391). A tort usually arises " independent of contract " although it may have relation to obligations growing out of contract. (*Busch* v. *Interborough R. T. Co.,* 187 N. Y. 388, 391; cf. *Lynch* v. *Syracuse R. T. Ry. Co.,* 66 Misc. 573, affd. 139 App. Div. 925.)

Where, as in the case before us, the contractual relationship occupies fully the rights and responsibilities of the parties to the account on deposit, there exists a completely enforcible and well-understood contractual undertaking. The breach of such contract, long recognized and enforced at law according to a consistent policy of the court, and in consonance with the accepted custom of the business community, should not be treated as some other kind of " wrong " separately actionable.

Residually there appears in the third cause of action an attempt to plead that the reduction of the balance in the plaintiff's account with defendant due to the charging of the forged checks led the defendant to terminate plaintiff's credit with it and hence injured plaintiff's business position. But no right to have such a credit continued in the event the balance was maintained is pleaded. The pleading states that defendant was " under a duty " to advance moneys and credit to plaintiff and which it had " agreed " it " would extend " as " long as plaintiff maintained its account with defendant " at a stated level. This is merely an agreement to extend credit terminable at will, but if it were more, the cause of action suggested would be based on breach of that contract and not on defendant's alleged negligence leading to its breach of contract.

Appellant's attack on paragraph 13 of the complaint must be deemed disposed of on the earlier appeal here (283 App. Div. 709) and was properly decided at Special Term.

The order should be modified by striking out as insufficient the third cause of action and as thus modified affirmed, with $20 costs.

BREITEL, J. (dissenting). The only serious question on which there is disagreement in this case is whether a depositor in a commercial bank can recover for negligence of the bank in the performance of its contractual duties.

It is argued, in general terms, that one who negligently breaches his contract is liable in contract and not in tort, at least usually. I know of no such rule. In fact, for years, it has been stated to be otherwise. Thus, Wharton wrote: "Where a contract creates a duty, the neglect to perform that duty, as well as the negligent performance of it, is a ground of action for tort. Hence it is at the election of the party injured to sue either on the contract or the tort." (Wharton on Negligence [2d ed. 1878], p. 364.)

Our Court of Errors, as early as 1834, had this to say, speaking not only of intentional torts but of negligence: "Not only in cases of implied, but also in cases of express contracts, if they create a duty, *case* will lie; for although there be an express contract, a party is not bound to resort to that contract — he may declare on the tort, and say that the party has neglected his duty." (*Butts* v. *Collins,* 13 Wend. 139, 154.)

Moreover, to attempt to analyze the instance case in terms of "tort" or "contract" is to engage in unprofitable pursuit, for the distinction in concepts is not so facilely drawn. "Mere breach of contract, generally speaking, is not a tort. Yet the distinction between torts and breaches of contract is, ofttimes, so dim and shadowy that no clear line of delineation may be observed and no accurate or satisfactory definition of either may be formulated. [Citations.] Under each cause of action, whether framed in tort or on contract, default or breach of duty involves an injury. At times the same facts may warrant procedure *ex contractu* or *ex delicto*. At such times recovery is not conditioned on definition nor measured by a determination of whether it is grounded in a violation of a duty owing to another or in a breach of a contractual obligation." (*Greco* v. *Kresge Co.,* 277 N. Y. 26, 33–34; cf. Prosser on Torts [1941], pp. 6–10.) It should be noted here, too, that the court was not limiting its remarks to intentional torts, and the case involved negligently caused death.

The books are filled with cases where, although the relationship, the duty, and the breach of the duty arose in contract, there is liability in tort for the proximate and consequential

damages, especially where, as here, the damages may not be encompassed by the scope of the contract. (See, generally, Prosser on Torts, *supra,* pp. 202–205 and cases cited therein.) Thus, for example, where a physician agrees to correct a physical condition and is unsuccessful, he may be liable to his patient for breach of contract (*Colvin* v. *Smith,* 276 App. Div. 9) or in tort for negligence in the performance of his undertaking (*Colvin* v. *Smith,* 275 App. Div. 1018), albeit the measure of liability is different. (See, also, *Frankel* v. *Wolper,* 181 App. Div. 485, affd. 228 N. Y. 582; *Conklin* v. *Draper,* 229 App. Div. 227, affd. 254 N. Y. 620, and *Monahan* v. *Devinny,* 223 App. Div. 547.) So, also, a common carrier may be liable in tort, as well as contract, to its passenger for harm resulting from violence and even insult. (*Gillespie* v. *Brooklyn Heights R. R. Co.,* 178 N. Y. 347; *Green Bus Lines* v. *Ocean Acc. & Guar. Corp.,* 287 N. Y. 309, 312.)

Even outside the fields of physical and mental harm and injury to reputation, namely, in the area of business relationships, entered into solely for pecuniary gain, the law has recognized the coincidence of tort and contract liability. Thus, a telegraph company which fails to accurately transmit and deliver a message is liable to the sender for the loss sustained by reason of his failure to gain a price advantage on a contract. Although the action may be in contract, the gravamen lies in negligence. (*Pearsall* v. *Western Union Tel. Co.,* 124 N. Y. 256; cf. *Western Union Tel. Co.* v. *Krichbaum,* 132 Ala. 535, where it was held that a cause of action may be alleged in contract or tort.)

When the cases speak of tort being independent of contract they, obviously, do not mean total nonrelation to a contract in the sequence of events. They mean that the elements of the tort cause of action must be supplied independently of the contract, except insofar as the contract is necessary to establish the relation, and, perhaps, the scope of the duty, in which the tort is alleged to have occurred. None of this is strange. The fact is that, historically, the remedy for breach of promise originated in action on the case, and the more specialized remedy in assumpsit arose later.

It is also urged that, in the field of banking, the concept of negligence has been limited to the rule of defensive estoppel, that is, to preclude a depositor from recovering from a bank for breach of its contract, or to the special instance of the savings bank (*Kummel* v. *Germania Sav. Bank,* 127 N. Y. 488), where the courts have relieved the depositor of the harshness that

would result from applying strictly the waiver provisions of the bank's contract with its depositor. Again, I know of no such narrow restriction as a matter of policy or precedent.

There are many instances where a commercial bank has been held liable to its depositor in tort, as well as contract, for the proximate and consequential damages resulting from a breach of its contractual duty. There is the line of cases based upon the bank's refusal to honor a properly-drawn check at a time when the depositor has a sufficient credit balance. (*Wildenberger* v. *Ridgewood Nat. Bank,* 230 N. Y. 425; *Citizens Nat. Bank of Davenport, Iowa,* v. *Importers & Traders' Bank,* 119 N. Y. 195; *Glennan* v. *Rochester Trust & Safe Deposit Co.,* 209 N. Y. 12, 17; *Burroughs* v. *Tradesmen's Nat. Bank,* 87 Hun 6, affd. 156 N. Y. 663; *Clark Co.* v. *Mount Morris Bank,* 85 App. Div. 362, affd. 181 N. Y. 533; *Wahrman* v. *Bronx Co. Trust Co.,* 246 App. Div. 220; *Davis* v. *Standard Nat. Bank,* 50 App. Div. 210; *Allen* v. *Bank of Amer. Nat. Trust & Sav. Assn.,* 58 Cal. App. 2d 124.) The theory underlying the causes of action in these cases — whether in tort or in contract — rests upon the implied obligation of the bank to pay in accordance with the depositor's order. A breach of this obligation resulting in damage to the depositor's credit gives rise to either a tort or contract action. These cases are distinguishable from this case only in form; in the one, there is a wrongful refusal to pay, whereas in the other (the instant case), there is a wrongful payment. There is no difference in substance, for, in either event, the depositor is injured in his credit relations. His credit standing is the protected interest, an injury to which should motivate the court to prescribe a remedy in this case, as was done in the wrongful-refusal-to-pay cases. It may be that, as matter of proof, the consequences of the allegedly negligent payments were not foreseeable or that the causation will not turn out to be proximate, but remote. Before us, however, is not the proof but the allegations of a pleading which we are bound to accept as true for the purposes of this motion.

There are also other cases in which depositors have recovered in tort for breach of the contractual duty by the bank, for harm not clearly within the scope of the contract. One of these is *Collins* v. *City Nat. Bank & Trust Co. of Danbury* (131 Conn. 167, 169). In that case, plaintiff opened a checking account with defendant bank. He cashed one of the checks at another bank which forwarded it to defendant for collection. Defendant returned the check with a slip marked " ' no account ' ". On its return, the bank which cashed it procured plaintiff's arrest on

a criminal charge of obtaining money by false pretenses. After acquittal, plaintiff instituted a tort action to recover damages for his arrest. The court sustained a verdict for plaintiff, holding that defendant bank owed him a duty to exercise reasonable care in ascertaining whether he had an account, and that a jury could find that it was foreseeable that the breach of that duty would result in exposure to criminal prosecution.

Admittedly, there are cases holding that a commercial bank which honors a check bearing a forged indorsement is liable in contract to the depositor, to the extent that his account has been drawn down, despite the fact that it acted in good faith and with utmost care. (*Los Angeles Inv. Co.* v. *Home Sav. Bank,* 180 Cal. 601; *McCornack* v. *Central State Bank,* 203 Iowa 833.) But this rule is no different from that which obtains generally in the law of contracts. This is, however, far from establishing the further principle that a contract obligation precludes the existence of a tort standard of care and remedy for its breach. No case involving a forged indorsement has been cited for that proposition.

Now, as noted earlier, it has been asserted that the word '' negligence '', when used in a number of New York cases involving actions by depositors to recover payments made on forged indorsements by commercial banks, has merely been a reference to defensive estoppel or the conditions under which the bank is enabled to avoid its contractual liability, that is, it is not a reference to an independent tort. The cases do not bear this out. Defensive estoppel, an extension of the general rules applicable to estoppel, is distinct from cause of action for negligence. It has been held that, even where the tests of estoppel are not met, the bank may have a *cause of action in negligence* against the depositor. (*National Sur. Co.* v. *Manhattan Co.,* 252 N. Y. 247; *Potts & Co.* v. *Lafayette Nat. Bank,* 269 N. Y. 181, 189.) In the *National Sur. Co.* case (*supra*), the depositor instituted a contract action against its commercial bank to recover payments made on forged indorsements. The bank, for its defense, asserted that plaintiff was estopped by its carelessness and was liable in negligence as an offset to any recovery by plaintiff. The court held that, since the checks were paid prior to plaintiff's discovery of the forgery, in which plaintiff did not participate, there could be no application of the doctrine of estoppel by carelessness. It also held, however, that, upon discovery, a depositor owes his bank a duty to make prompt disclosure of the forgeries, for the breach of which duty he is liable in negligence, provided, as in all negligence cases, the

bank could establish that this breach of duty caused harm. Manifestly, if the bank may sue in negligence, so may the depositor. For reciprocal duties there should be reciprocal opportunity for redress, in kind. Certainly there is no artificial barrier between tort and contract wreaking injustice and inequality of remedy on the depositor.

England has developed a rule which goes even further than that of the *National Sur. Co.* case (*supra*). There, it has been held that a depositor owes to his bank a duty to anticipate and obviate forgery. Thus, where the depositor-drawer negligently permitted a forger in his employ to raise a check, the court held that he was liable for the loss caused the bank, namely, the difference between the amount as originally written and the amount of the raised check. (*London Joint Stock Bank* v. *Macmillan* [1918], A. C. 777; Paget's Law of Banking [5th ed. 1947], pp. 168–171; Falconbridge, Banking & Bills of Exchange [4th ed., 1929], pp. 582–585.) Paget sums up the duties of the bank and its depositor, thusly: "Of course the banker must not be negligent; it is as much a part of his contract to take care as it is of the customer's, and it is true that as a general rule he has himself to bear loss accruing from his negligence." (Paget's Law of Banking, *supra,* p. 166.)*

The relationship of depositor and bank is not a philanthropic or gratuitous one. There is profit to be gained, albeit indirectly sometimes, by both parties to the relation. Where the breach of contract, in the form of payment on a check bearing a forged indorsement, arises from negligence, with proximate and foreseeable harm beyond the scope of the contract and the contract measure of damages, the logic of the law and the sense of justice dictate the existence of a tort cause of action in favor of the depositor. I know of no rule or precedent that frustrates that logic, or should. It is shocking to me that a bank can be negligent, cause foreseeable gross harm to a depositor, and yet escape liability therefor, without even a stipulation for limited liability in its contract with the depositor. Yet that is the rule the majority would innovate, without sanction in authority or justification in policy.

---

* In England, however, it should be noted, by express statutory provision (Bills of Exchange Act, § 60), the bank is relieved of liability to its depositor where, "in good faith and in the ordinary course of business," it pays out on a check bearing a forged indorsement, even though it was negligent. (Paget's Law of Banking, *supra,* p. 166; Falconbridge, Banking & Bills of Exchange, *supra,* p. 581.)

The attacked cause of action is most inartfully pleaded. Certainly I would prefer a pleading more exact and more clear in spelling out the nexus of the ground for relief. But it is not necessary to discuss the formal infirmity of the pleading, for the majority has declared that no cause of action can be pleaded, and it is with that assertion that there is emphatic disagreement.

Accordingly, the order appealed from should be affirmed.

PECK, P. J., and CALLAHAN, J., concur with BERGAN, J.; BREITEL, J., dissents and votes to affirm in opinion in which BASTOW, J., concurs.

Order modified so as to grant defendant's motion to strike out as insufficient the third cause of action and, as so modified, affirmed, with $20 costs and disbursements to the appellant. [See *post*, p. 871.]

