**GENERAL APPAREL SALES CORP.,**
**Plaintiff,**

v.

**The CHASE MANHATTAN BANK, N. A.,**
**Defendant.**

**No. 70 Civ. 1410.**

United States District Court,
S. D. New York.

Oct. 23, 1970.

892

Friend & Reiskind, New York City, for plaintiff; Edwin M. Reiskind, Jr., New York City, of counsel.

Matthew F. Donohue, New York City, for defendant; Joseph V. Hamilton, Jr., New York City, of counsel.

## MEMORANDUM OPINION

LASKER, District Judge.

In this suit by a North Carolina corporation against a national banking association which has its principal office in the Southern District of New York, the plaintiff moves for summary judgment. The suit relates to two checks in the total amount of $16,729.75 which defendant received for the account of plaintiff and the proceeds of which defendant disbursed from that account. Plaintiff claims that, as a matter of law, defendant had authority neither to receive and collect the checks nor to permit the proceeds to be withdrawn.

The material facts are not in dispute [1] and may be described as follows: For some time prior to September 17, 1969, plaintiff maintained a checking account

---

1. Although defendant has submitted on this motion a document entitled "Respondent's Statement of Material Facts in Controversy, Pursuant to General Rules 9(g)," the statement does not abide by the requirements of the rule that the papers opposing a motion for summary judgment shall include a "separate, short and concise statement of the material facts to which it is contended that there exists a genuine issue to be tried," but rather sets forth affirmatively a statement of facts which defendant contends exist. A comparison of plaintiff's and defend-

ant's 9(g) statements shows that the only significant dispute is as to whether defendant had knowledge that Murray Wilson, plaintiff's former President, was no longer President of plaintiff and authorized to draw on plaintiff's account. However, the dispute as to this fact is not material, since, as indicated in the text of this opinion, the determination of defendant's liability does not rest on a finding as to its knowledge or lack of knowledge of Wilson's status at the critical time.

with defendant at its office at 2 Park Avenue, New York City. On that day one of plaintiff's officers telephoned Daniel McGlynn, an Assistant Treasurer of defendant, and requested that plaintiff's bank account be closed forthwith and that all funds in the account be forwarded to plaintiff's credit and account with the North State Bank of Burlington, North Carolina. McGlynn advised Maurice Koury, Chairman of plaintiff's Board of Directors, to put the request in writing, which Koury did, sending a letter of instructions on September 17, 1969, by certified mail, return receipt requested, addressed to the defendant to the attention of McGlynn. The letter, received by defendant on September 18, reads as follows:

"Confirming our phone conversation, we wish to close our checking account, General Sales Corp. Account # 020-1-031986, immediately. All funds are to be transferred by wire to our Account # 101-344-5 with the North State Bank of Burlington, North Carolina. This transfer must be made through North Carolina National Bank in Charlotte, North Carolina for the account of North State Bank.

"I assume complete responsibility for this account as I am acting within the scope of my authority as Chairman of the Board of Directors.

"If you encounter any problems in carrying out our instructions, please feel free to phone us at 919 226-5581.

Sincerely yours,

GENERAL APPAREL
SALES CORP.

Maurice Koury"

On September 26, 1969, the defendant marked the plaintiff's checking account closed, and on September 30 mailed to the plaintiff a final statement (for the period August 29 through September 26) showing a zero balance in the account.

There was no further activity in the account until February 17, 1970, on which date the defendant accepted two checks payable to plaintiff's order in the total amount of $16,729.75, the proceeds of which defendant collected on February 19, 1970 and deposited in plaintiff's closed account. The proceeds of the checks were admittedly disbursed to some party other than the plaintiff. Curiously, the record contains no positive identification of the person to whom the proceeds were in fact paid, but only the statement in the affidavit of George R. Janssen, Second Vice President of defendant, sworn to June 24, 1970, that

"I believe Murray Wilson made the deposits on * * *. February 17, 1970 and the withdrawals between February 17 and February 25, 1970, but I cannot be certain."

In any event, the disposition of the case does not depend on whether Wilson, the former President of plaintiff, who had been authorized to draw on this account, did in fact receive the proceeds, but rather, on the fact that the proceeds were, without plaintiff's authority, paid out, in violation of the instructions of plaintiff as set forth in its letter of September 17, 1969, to some person other than the plaintiff or a person to whom payment was authorized by plaintiff. On the basis of these facts, the complaint alleges that defendant is liable for permitting unauthorized persons to convert the proceeds of the checks and for its negligence in doing so. The answer alleges that the defendant was authorized to do what it did, that the plaintiff was negligent, and that the plaintiff is estopped from bringing the suit.

This diversity case is governed by New York law. Article 4 of the Uniform Commercial Code of New York appears to control. Article 4-103 reads in relevant part:

"(1) The effect of the provisions of this Article may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; * * *"

Subparagraph 4 of the official comment relating to Section 4–103 reads:

"Under this Article banks come under the general obligations of the use of good faith and the exercise of ordinary care. * * * The term 'ordinary care' is not defined and is here used with its normal tort meaning and not in any special sense relating to bank collections."

■ The undisputed facts here clearly establish that defendant failed to meet its statutory obligations to use ordinary care when, contrary to the unqualified written instructions of plaintiff, it (1) received and deposited the checks in the closed account of plaintiff and (2) having deposited the checks, failed to remit all balances to the plaintiff's account in North Carolina, as instructed. The direct result of such failure to use ordinary care was to permit the withdrawal of the proceeds of the check from the account of the plaintiff. It matters not that the probable withdrawer was a person who had at all times prior to the closing of the account been authorized by plaintiff to draw on its account. The letter of instructions of the plaintiff clearly superseded any prior authorizations by plaintiff and put defendant on notice not to accept checks for deposit in the account, and, in any event, even if checks were received and deposited, to remit all proceeds to plaintiff's North Carolina bank account. This view of the matter is supported by such cases as Stella Flour & Feed Corp. v. The National City Bank of New York, 285 App. Div. 182, 136 N.Y.S.2d 139, which held:

"A high standard of contractual responsibility has been imposed on banks in paying money chargeable against their depositors' accounts; * * * * "

Although the *Stella* decision refers to forgeries or alterations, its rationale appears clearly consistent with the provisions of the Uniform Commercial Code.

Furthermore, although the decision does not depend on it, an argument can well be made that, under Section 4–201 of the Uniform Commercial Code, after the closing of the account the bank no longer remained an agent of the plaintiff and for that reason alone had no authority to accept, deposit or disburse checks payable to the plaintiff. Paragraph (1) of Section 4–201 reads:

"Unless a contrary intent clearly appears and prior to the time that a settlement given by a collecting bank for an item is or becomes final * * * the bank is an agent or sub-agent of the owner of the item and any settlement given for the item is provisional."

Here the written instructions of plaintiff clearly constituted "a contrary intent" and deprived the bank of its prior agency.

■ Defendant cites no authority whatsoever in its opposition to the motion, but claims merely that it should be permitted an opportunity to complete discovery in order to support its defenses of authorization, negligence of the plaintiff, and estoppel. Its papers contain nothing to indicate that if it were permitted to complete discovery, any evidence would be secured which would lend support to its defenses.[2] To the con-

---

2. Although in its papers and at argument on the motion the defendant sought the opportunity to complete discovery prior to determination of this motion, its counsel has, in recent correspondence with the court, cast some doubt on defendant's position in the matter. On October 7 plaintiff's counsel wrote to the court stating in relevant part:

"[T]he defendant argued that it was not in possession of all of the facts to counter this motion without conducting pre-trial examinations.

"More than three months have elapsed since the argument of the motion and the defendant has not taken any steps whatsoever to conduct any pre-trial examinations. * * * "

In reply to this, defense counsel wrote on October 15:

"This office had determined not to undertake discovery proceedings herein until it knew the outcome of the pending motion. This decision was made, of course, without knowledge of the

trary, for the reasons stated above, the bank clearly was not authorized to act after it received the written and oral instructions to close the account and forward the balance of funds. The plaintiff was in no way negligent since all the steps which it took were customary and, in particular, followed the instructions of defendant's Assistant Treasurer as to how the account should be closed. Finally, no estoppel on the part of plaintiff exists, since in closing the account it used due diligence, obeyed the defendant's prescribed procedure, and took no affirmative steps which ever qualified its written instructions.

For the reasons stated above plaintiff's motion for summary judgment is granted.

It is so ordered. Submit judgment on notice.

time-span due to elapse before the decision was handed down. Such fore-

knowledge would have changed that decision."