Alberto **WEXSELBLATT** and Fanny **Wexselblatt, Plaintiffs,**

v.

**BANK OF BOSTON INTERNATIONAL, Defendant.**

**No. 86 CIV. 3737 (PKL).**

United States District Court, S.D. New York.

July 24, 1987.

Richard A. Canton, New York City, for plaintiffs.

Edwards & Angell, New York City, Susan S. Egan, of counsel, for defendant.

## OPINION & ORDER

LEISURE, District Judge:

This action is brought by two holders of a joint bank account against the Bank of Boston International (the "Bank"). In dispute are transactions between the defendant and three joint tenants of a single bank account. Plaintiffs allege causes of action for breach of contract, negligence and conversion. Presently before the Court are cross-motions for summary judgment.[1]

### Factual Background

On February 22, 1982, three Argentinian nationals, Eduardo Wexselblatt and the plaintiffs, Alberto Wexselblatt and Fanny

---

1. By order dated April 20, 1987, the Court converted defendant's motion to dismiss to one for summary judgment. *See, e.g., Blassingame v.* *Secretary of the Navy,* 811 F.2d 65, 74 (2d Cir. 1987).

Wexselblatt, established a joint bank account, No. 202–5590 (the "Account"), at the Bank. *See* Affidavit of Drigelio Saldana, sworn to on December 15, 1986 (the "Saldana Affidavit") at ¶ 2 and Exh. A annexed thereto. After discovering that Eduardo Wexselblatt was stealing from them, the plaintiffs requested by letter dated January 3, 1984, that two-thirds of the Account be used to establish a new account in their names only. *See* Exh. D to Affidavit of Assunta Petriccione, Esq., sworn to on December 16, 1986, (the "Petriccione Affidavit") at 89–90; Exh. E to Saldana Affidavit.

By letter, with enclosures, dated February 27, 1984, the plaintiffs submitted to the Bank documentation relating to the opening of their new account. *See* Saldana Affidavit at ¶ 5 and Exh.'s F & G annexed thereto. Before establishing the new account, however, the Bank, by letter dated April 17, 1984, sought Eduardo Wexselblatt's cooperation regarding plaintiffs' request. *See* Saldana Affidavit at ¶ 6 and Exh. H annexed thereto. By letter dated May 12, 1984, Eduardo Wexselblatt responded by requesting the bank to disregard plaintiffs' previous instructions. He requested that the Bank instead distribute $120,000 from the Account to a new account in his name only and leave the remainder for plaintiffs. *See* Saldana Affidavit at ¶ 7 and Exh. I annexed thereto.

In a letter dated May 29, 1984, the Bank notified Eduardo Wexselblatt that it was awaiting a letter of instruction signed by all three account holders. *See* Saldana Affidavit at ¶ 9 and Exh. J annexed thereto. In a letter to Eduardo Wexselblatt dated July 11, 1984, with copies sent to plaintiffs, the Bank reiterated the need for uniform instructions regarding the Account from the three account holders. *See* Saldana Affidavit at ¶ 10 and Exh. K annexed thereto.

On July 23, 1984, Eduardo Wexselblatt directed the Bank to transfer $145,000 from the Account into a Swiss bank account in his name only. *See* Saldana Affidavit at ¶ 11 and Exh. L annexed thereto. The bank effectuated this transfer, and on July 26, 1984, the Bank closed the Account with a final balance of about $4,300 drawn by a check signed and cashed by Eduardo Wexselblatt. Saldana Affidavit at ¶ 11.

### Contract Claim

Defendant claims that, even assuming it was in breach of its contract with plaintiffs, it is immunized by N.Y. Banking Law § 675(a) (McKinney 1971). Section 675(a), which governs joint deposits, provides in pertinent part:

> When a deposit ... has been made ... with any banking organization ... in this state ... in the name of such depositor ... and another person and in form to be paid or delivered to either, or the survivor of them, such deposit ... shall become the property of such persons as joint tenants and the same ... may be paid or delivered to either ... and such payment or delivery and the receipt or acquittance of the one to whom such payment or delivery is made, shall be a valid and sufficient release and discharge to the banking organization ... for all payments or deliveries made on account of such deposit ... *prior* to the *receipt* by the *banking* organization ... of *notice in writing* signed by any one of such joint tenants, *not to pay or deliver* such deposit ... *in accordance with the terms thereof....*

(emphasis added). Defendant contends that § 675(a) applies because "[a]t no time did the plaintiffs provide the required notice...." Defendant's Memorandum of Law at 3.

Defendant argues that plaintiffs' January 3, 1984, letter to the Bank, requesting that two-thirds of the Account be used to establish a new account in their names only, was insufficient to constitute notice under § 675(a). Defendant's Reply Memorandum of Law at 2. Defendant implies that only an explicit statement by plaintiffs "not to pay Eduardo" Wexselblatt would constitute the required notice. *Id.* The only case cited by defendant in support of this position is *Brown v. Bowery Savings Bank*, 51 N.Y.2d 411, 434 N.Y.S.2d 916, 415 N.E.2d 906 (1980). In its decision in *Brown*, however, the Court of Appeals did

not even address the issue of notice.[2] In fact, § 675(a) merely requires written notice "not to pay or deliver such deposit ... in accordance with the terms thereof...."

Fed.R.Civ.P. 56(c) provides that a court shall grant a motion for summary judgment if it determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986)), *cert. denied*, —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). In this case, it is a question of fact whether the bank received the notice required by § 675(a). It is at least reasonable to infer that plaintiffs' letter requesting the transfer of two-thirds of the Account to a new account in their names only meant that such amount, about $93,000, should not be paid in accordance with the terms of the Account, which allowed withdrawal by Eduardo Wexselblatt. *See* Saldana Affidavit at ¶¶ 3, 11.

■ The bank has also argued that even if § 675(a) does not apply, it is nevertheless entitled to summary judgment because it did not breach any contractual provision.

Defendant's Reply Memorandum of Law at 5–6. Plaintiffs' contract claim is based on the signature card agreement with the bank, which states:

> [T]his account and any sum now or hereafter appearing to the credit thereof may be: in whole or in part and by or upon the order of either or the survivor on his or her sole signature withdrawn, transferred, assigned or pledged, or changed on the books of the Bank into accounts in the name of either or of any other person or persons.

*See* Saldana Affidavit at ¶ 3 and Exh. A annexed thereto. "The Bank does not deny plaintiffs' right to withdraw money from the [A]ccount...." Defendant's Reply Memorandum at 6. But it contends that its delay in effectuating plaintiffs' request did not constitute a breach because "[t]here is no contractual provision requiring transfers to be speedy...." *Id.* It is clear beyond peradventure, however, that where a contract does not specify a time for performance, "the law implies a reasonable time." *Southard v. Alford*, 50 A.D.2d 664, 374 N.Y.S.2d 832, 834 (App.Div.1975) (citation omitted). Moreover, "the determination of what is a reasonable time is usually a question of fact." *Id.* (citation omitted). In this case, it is a genuine issue for trial whether the Bank's delay was unreasonable.[3]

Accordingly, the cross-motions for summary judgment on the claim for breach of contract are hereby denied.

**2.** The sufficiency of notice given in *Brown* had been at issue in the lower courts, but the Court of Appeals based its affirmance of the denial of immunity to the bank on an alternative ground. *See* 434 N.Y.S.2d at 917–18, 415 N.E.2d at 907–09. In the Supreme Court, Appellate Division, the question was whether an *oral* inquiry could constitute sufficient notice under § 675(a). The dissenters stated that "[i]f plaintiff wished to prevent her son from unilaterally controlling these accounts, she was obliged to give written notice to that effect." *Brown v. Bowery Savings Bank*, 72 A.D.2d 701, 422 N.Y.S.2d 1021, 1022 (App.Div.1979).

**3.** The five-month delay cannot be considered reasonable as a matter of law. The Bank asserts that the reason for the delay was its decision to require "all the necessary documentation

from all of the account holders," including Eduardo Wexselblatt, before effectuating plaintiffs' requested transfer. *See* Saldana Affidavit at ¶ 6. According to the signature card agreement, however, the signature of one joint account holder is sufficient for a transfer, withdrawal, or change on the Bank's books into accounts in new names. *See* Saldana Affidavit at ¶ 3 and Exh. A annexed thereto. By contrast, the signatures of all joint account holders are required for a change in the provisions of the signature card agreement. *See id.* It is interesting to note that the Bank "may require the receipt or acquittance of" all the joint account holders for any further payments *after receipt of notice* pursuant to § 675(a). N.Y. Banking Law § 675(a) (McKinney 1971).

## Other Claims

Plaintiffs claim that the Bank was negligent in failing to comply with their request for withdrawal and transfer to a new account. Complaint at ¶¶ 17–22. It has been held, however, that "[w]here the contractual relationship of the parties defines the rights of each, the breach of that contract does not result in a 'wrong' which is separately actionale." *Olmeca, S.A. v. Manufacturers Hanover Trust Co.,* 629 F.Supp. 214, 223 (S.D.N.Y.1985). The exception to this rule occurs "only where the contract creates a relation out of which springs a duty, independent of the contract obligation, and that independent duty is also violated." *Luxonomy Cars, Inc. v. Citibank, N.A.,* 65 A.D.2d 549, 408 N.Y. S.2d 951, 954 (App.Div.1978). In this case, the relationship between the bank and the plainitffs, its depositors, was that of debtor and creditor, and was purely contractual. *See Middle East Banking Co. v. State Street Bank Int'l,* 821 F.2d 897, 901 (2d Cir.1987); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 122 (2d Cir.1984); *Stella Flour & Feed Corp. v. National City Bank of New York,* 285 A.D. 182, 183–84, 187, 136 N.Y.S.2d 139 (App.Div.1954), *aff'd,* 308 N.Y. 1023, 127 N.E.2d 864 (1955). Accordingly, plaintiffs' negligence claim is hereby dismissed.

Plaintiffs' third cause of action is for conversion. Complaint at ¶¶ 12–16. In New York, a plaintiff may not maintain an action for conversion where, as in this case, " 'damages are merely being sought for breach of contract.' " *Fraser v. Doubleday & Co.,* 587 F.Supp. 1284, 1288 (S.D.N. Y.1984) (quoting *Peters Griffin Woodward, Inc. v. WCSC, Inc.,* 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (App.Div.1982)). Moreover, "[a]n action for conversion requires specific and identifiable property." *Luxonomy Cars,* 408 N.Y.S.2d at 954. A joint bank account does not satisfy that requirement. *See, e.g., Independence Discount Corp. v. Bressner,* 47 A.D.2d 756, 365 N.Y.S.2d 44, 46 (App.Div.1975) (requiring "specific money"); *Luxonomy Cars,* 408 N.Y.S.2d at 954 (money in checking account not "specific and identifiable").

Accordingly, plaintiffs' conversion claim is hereby dismissed.

SO ORDERED.