Donald Edward HALLA, d/b/a Don Halla Investments, Appellant,

v.

NORWEST BANK MINNESOTA, N.A., Respondent.

No. C1–99–764.

Court of Appeals of Minnesota.

Oct. 12, 1999.

Review Denied Dec. 14, 1999.

Robert J. Bruno, Robert J. Bruno, Ltd., Burnsville, MN (for appellant)

Richard T. Thomson, Lapp, Laurie, Libra, Abramson & Thomson, Ch., Minneapolis, MN (for respondent)

Considered and decided by LANSING, Presiding Judge, PETERSON, Judge, and AMUNDSON, Judge.

## OPINION

LANSING, Judge.

The district court entered summary judgment on Donald Halla's conversion claims against Norwest Bank for checks and cash Halla's employee stole and deposited with Norwest. We affirm the summary judgment holding that the bank is not liable under the Uniform Commercial Code (U.C.C.) for conversion of the stolen checks. We also hold that Halla did not have a separate common law remedy for conversion of either the checks or the cash deposits.

## FACTS

Donald Halla employed Lynn Spaeth from 1993 until 1997 to manage five apartment buildings. Between 1994 and 1997, Spaeth stole rent payments totaling more than $100,000 and deposited them in her Norwest Bank account. The payments consisted of cash and checks. Spaeth endorsed the checks by forging Halla's name and then signing her name. She withdrew all of the funds from her account before Norwest learned of the theft.

Halla sued Norwest, alleging conversion under both the common law and the U.C.C. The district court granted Norwest summary judgment, holding that (1) Norwest was an innocent third party not liable for the conversion of checks under either the U.C.C. or the common law; and (2) Norwest was not liable for conversion of the cash because Halla failed to produce evidence that Norwest knew the cash was stolen. This appeal followed.

## ISSUES

I. Is Norwest entitled to summary judgment on Halla's claim for conversion of rent checks?

II. Is Norwest entitled to summary judgment on Halla's claim for conversion of cash deposits?

## ANALYSIS

A court may grant a motion for summary judgment when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that either party is entitled to judgment as a

matter of law.[1] On appeal from summary judgment, this court examines whether genuine issues of material fact exist and whether the district court erred in its application of the law.[2] A genuine issue of material fact exists when the evidence is sufficiently disputed to require submission to a factfinder.[3]

## I

■ The conversion of checks is governed by Minn.Stat. § 336.3–420(a) (1998), which provides in relevant part:

The law applicable to the conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

Both Halla and Norwest interpret this language as providing distinct common law and statutory remedies for the conversion of negotiable instruments. For two reasons, we read Minn.Stat. § 336.3–420(a) as expanding the definition of conversion under former Minn.Stat. § 336.3–419(a) (1990) to include the common law definition of conversion, but not as preserving a separate common law remedy for negotiable instrument conversion.[4]

First, under the previous statute, conversion of an instrument was limited to circumstances in which (a) an acceptance drawee refused to return the instrument on demand, (b) a payment deliveree refused either to pay or return it on demand, or (c) the instrument was paid on a forged indorsement.[5] The new statute adopts the common law governing the conversion of personal property and expands it by providing that instruments are also converted in other specified circumstances.

Second, when analyzing the interaction between the common law and other U.C.C. provisions, the Minnesota Supreme Court has emphasized the value of maintaining an exclusive set of remedies for commercial transactions.[6] For the U.C.C. to be effective, parties in commercial transactions must be able to rely on the remedies provided by the Code.[7] We see no reason to sacrifice the certainty and consistency of the U.C.C. remedies to preserve common law remedies for conversion of negotiable instruments.

For these reasons, we read the language changes in Minn.Stat. § 336.3–420(a) to broaden the definition of conversion, but not to allow a separate common law claim for conversion of negotiable instruments. On this ground, we affirm the district court's summary judgment on the common law conversion claim for the stolen checks.

■ We also affirm the court's summary judgment on Halla's U.C.C. claim. Under the U.C.C., employers bear the risk of loss created by employees who are entrusted with responsibility with respect to negotiable instruments, unless the payor

---

1. Minn. R. Civ. P. 56.03.

2. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997).

3. *Id.*

4. U.C.C. § 3–420 cmt. 2, Unif. Commercial Code § 3–420, 2 U.L.A. 127 (1991) ("Section 3–420 is a modification of former Section 3–419.").

5. Minn.Stat. § 336.3–419(1) (1990).

6. *See Superwood Corp. v. Siempelkamp Corp.,* 311 N.W.2d 159, 162 (Minn.1981) (legislature did not intend for tort law to circumvent U.C.C.'s statutory scheme), *overruled on other grounds by Hapka v. Paquin Farms,* 458 N.W.2d 683 (Minn.1990).

7. *See Hapka,* 458 N.W.2d at 688 (U.C.C. must control exclusively with respect to damages in a commercial transaction); *see also Impulse Trading, Inc. v. Norwest Bank Minnesota, N.A.,* 907 F.Supp. 1284, 1288 (D.Minn.1995) (interpreting Minnesota's version of U.C.C. Article 4A to preempt common law when conflicting or duplicative).

fails to exercise ordinary care in paying the instrument:

> For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value * * *, if an employer entrusted an employee with responsibility with respect to the instrument and the employee * * * makes a fraudulent endorsement of the instrument, the endorsement is effective as the endorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value * * * fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.[8]

"Ordinary care" is the "observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged."[9] Thus, to avoid summary judgment, Halla must establish a genuine issue of material fact on whether (1) Norwest paid the instrument in good faith, (2) Halla entrusted Spaeth with responsibility, or (3) Norwest exercised ordinary care. Halla has not provided sufficient evidence to establish a triable dispute on any of the three issues.

■ "Good faith" is "honesty in fact and the observance of reasonable commercial standards of fair dealing."[10] It is a subjective standard and is presumed "unless and until the contrary is proved."[11] Halla argues that Norwest's undisputed practice of taking every instrument bearing a customer's endorsement demonstrates lack of good faith. The bank's use of a processing system reasonably necessary to deal with the high volume of checks ordinarily handled by banks does not, without other evidence, demonstrate an absence of good faith.[12] Halla also argues that Norwest failed to act in good faith because it did not have a policy against accepting for deposit checks that named a business as a payee, or a policy to examine whether individual depositors were fiduciaries. This argument, however, relates to ordinary care, rather than good faith.[13] Halla has thus not shown that a genuine issue of material fact exists on whether Norwest acted dishonestly or failed to observe reasonable commercial standards of fair dealing.[14]

■ Similarly, Halla has not shown that an issue of material fact exists on whether he entrusted Spaeth with responsibility. "Responsibility" includes the authority to act in a "responsible capacity" with respect to instruments.[15] Some commentators

8. Minn.Stat. § 336.3–405(b) (1998).

9. Minn.Stat. § 3–103(a)(7) (1998).

10. Minn.Stat. § 336.3–103(a)(4) (1998); *see Wohlrabe v. Pownell*, 307 N.W.2d 478, 483 (Minn.1981) (good faith simply requires "the honest belief that [one's] conduct is rightful").

11. *Weese v. Weese*, 191 Minn. 526, 530, 254 N.W. 816, 818 (1934); *see Barke v. Comstock State Bank*, 174 Minn. 471, 473, 219 N.W. 757, 758 (1928) (presumption is "that good faith attaches to ordinary business transactions").

12. 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 21–3, at 363 (4th ed.1995) (discussing the "explosive growth" in the use of checks).

13. U.C.C. § 3–103 cmt. 4, Unif. Commercial Code § 3–103, 2 U.L.A. 24 (1991) (distinguishing ordinary care from good faith/fair dealing); 2 White & Summers, *supra*, § 19–3(c), at 246 (distinguishing the standard of fair dealing from the standard of care).

14. *See* 2 White & Summers, *supra*, § 19–3(c), at 246 (bank's actions in this situation do not indicate lack of good faith, otherwise section 3–406(b) of the U.C.C. would be superfluous).

15. Minn.Stat. § 336.3–405(a)(3); *see* Bailey & Hagedorn, *supra*, § 30.14, at 30–67 ("The rule of the 1990 UCC covers a rather large group of employees as those responsible.").

suggest a responsible capacity is any position in which the employee has "continuing access both to checks and the records needed to cover their tracks."[16] Halla testified, and other evidence established, that Spaeth was responsible for collecting rent and damage deposits and for an accounting of these funds. In addition, Joseph Kenyon, a certified public accountant and fraud examiner who examined the evidence, concluded that Spaeth was an employee given responsibility over checks.

Thus, because Halla has failed to demonstrate the existence of a material fact on whether Norwest acted in good faith or whether he entrusted Spaeth with responsibility, summary judgment in Norwest's favor is appropriate unless Halla can establish a genuine issue of material fact on whether Norwest failed to exercise ordinary care.

■ Halla claims that Norwest's practice of taking endorsed checks, originally payable to a business, for deposit into a personal account establishes that Norwest failed to exercise ordinary care. Halla also claims that Norwest's failure to verify endorsements was an unreasonable commercial standard and that Norwest should have realized that Spaeth regularly deposited checks made payable to Halla.[17] The record contains no evidence to supports

Halla's assertions, however. Because a party resisting summary judgment must rest on more than mere averments,[18] Halla has not established a fact issue on whether Norwest failed to exercise ordinary care. The district court properly entered summary judgment in Norwest's favor on Halla's claim for conversion of rent checks.

## II

■ The relationship between a bank and a person who deposits money at the bank is that of debtor and creditor.[19] Halla asserts Norwest committed conversion by accepting Spaeth's deposit of cash stolen from him. But when a person makes a deposit, the bank becomes the depositor's debtor for the amount deposited and acquires title to the money deposited.[20] Because as a matter of law the cash "becomes the literal property of the bank, it cannot be tortiously converted by the bank."[21]

Other courts have reached the same result under a slightly different theory. Because cash is liquid and designed to be transferred, it is "a subject of conversion only when it is capable of being identified, and described as a specific chattel."[22] This is particularly true of cash deposited at a bank. Unless the deposited cash is segregated, there is no action for conversion.[23] Thus, because the cash Spaeth de-

16. 2 White & Summers, *supra*, § 19–4, at 261. *Compare* Uniform Commercial Code § 3–405, cmt. 3, case no. 1, 2 U.L.A. 101–02 (1991) (janitor who steals a check off a desk not entrusted with responsibility), *with id.*, case no. 3, 2 U.L.A. 102 (bookkeeper, whose duties include "posting the amounts of checks payable" to accounts, entrusted with responsibility).

17. *See Swift County Bank v. United Farmers Elevators*, 366 N.W.2d 606, 609 (Minn.App. 1985) ("Banks have no general duty to monitor their depositors' checking accounts.") (citation omitted), *review denied* (Minn. June 24, 1985); *see also Rodgers v. Bankers' Nat'l Bank*, 179 Minn. 197, 210, 229 N.W. 90, 95 (1930) (same).

18. *DLH*, 566 N.W.2d at 71.

19. *Rodgers*, 179 Minn. at 210, 229 N.W. at 95; *Swift County Bank*, 366 N.W.2d at 609.

20. 9 C.J.S. *Banks & Banking* § 270, at 260 (1996).

21. *Crocker–Citizens Nat'l Bank v. Control Metals Corp.*, 566 F.2d 631, 637 (9th Cir.1977) (citations omitted).

22. 89 C.J.S. *Trover & Conversion* § 23, at 541 (1955).

23. *Wexselblatt v. Bank of Boston Int'l*, 666 F.Supp. 513, 517 (S.D.N.Y.1987) ("conversion requires specific and identifiable property"); *Moore v. State Bank of Burden*, 240 Kan. 382, 729 P.2d 1205, 1210 (1986) ("money deposited, unless segregated into a special account and designated to be kept separate, becomes the property of the bank") (citation omitted).

posited became the property of Norwest as a matter of law, Halla cannot bring a common law claim for conversion.

## DECISION

Halla does not have a conversion claim against Norwest under the U.C.C. or the common law for either the stolen checks or the stolen cash. Halla has failed to establish a factual dispute on whether he entrusted Spaeth with responsibility for handling checks and cash, and whether Norwest acted in good faith and with due care. Halla therefore bears the risk of loss associated with the checks. Additionally, because a bank acquires title to deposited cash, Norwest is not liable for conversion of Halla's cash. The district court did not err in granting Norwest summary judgment.

**Affirmed.**