OPINION
Plaintiff-appellant, Amzee Corporation ("Amzee"), appeals from the judgment on the pleadings granted by the Franklin County Court of Common Pleas, pursuant to Civ.R. 12(C), in favor of defendants-appellees, Comerica Bank-Midwest and Comerica Bank ("Comerica Banks").
Amzee's complaint, filed April 21, 2000, alleged that, between September 1994 and December 1997, an Amzee employee, without the employer's knowledge or consent, caused checks drawn on the corporate checking account to be issued to Comerica Banks as payees. Thirty-five checks totaling $191,879.20 were listed in an exhibit to the complaint as having been accepted by Comerica Banks and applied toward the balance of the employee's personal Comerica Visa account debt. Amzee averred that Comerica Banks had no right to receive the checks or any other form of payment from Amzee on the Visa account for the reasons that Amzee and Comerica Banks had no business relationship, and that Amzee had no liability on the subject credit card account. Amzee contended further that Comerica Banks knew, or should have known, that Amzee would not and did not intentionally make payments on the Visa account for the benefit of its employee or any other person.
Based upon these alleged circumstances, Amzee asserted five common law claims for relief against Comerica Banks: (1) for money had and received; (2) for money paid by mistake; (3) for conversion; (4) for negligence; and (5) for unjust enrichment. The five claims for relief were stated with "simplicity and brevity" in general terms as suggested pursuant to Civ.R. 84 and as set forth in the Appendix of Official Forms to the Ohio Rules of Civil Procedure referred to by that rule.
Comerica Bank-Midwest was served with a summons and copy of the complaint on May 5, 2000, at its Toledo, Ohio office. Comerica Bank was served May 8, 2000, at its Detroit, Michigan office. Neither defendant answered the complaint nor otherwise appeared in the action to defend within rule. Consequently, Amzee moved on July 20, 2000, forty-five days following the answer date, for a default judgment against both, jointly and severally. Judgment by default was rendered the same day in the amount of $191,879.20, plus interest, in an additional amount of $73,497.89 for a total judgment of $265,377.09.
On October 5, 2000, seventy-seven days after the default judgment was journalized, Comerica Banks moved to set it aside on the grounds of mistake, inadvertence, or excusable neglect, pursuant to Civ.R. 60(B)(1), and for leave to answer the complaint instanter. Comerica Banks furnished affidavits by two of its in-house counsel and its outside legal counsel in support of the motion. Comerica Banks also tendered their answer to the complaint, in which they admitted that they received and cashed the checks detailed in the exhibit to the complaint as payments in the amounts listed on the credit card account of an Amzee's employee. Comerica Banks denied liability to Amzee, however, and asserted a number of affirmative defenses.
An assistant vice-president and associate counsel, working at the Michigan office of Comerica Banks, attested that correspondence was exchanged between the parties beginning with a letter of October 28, 1998, in which Amzee advised Comerica Banks about its discovery of the employee's wrongdoing. Amzee demanded immediate return of funds characterized as having been wrongfully paid to Comerica Banks, then converted and wrongfully retained by them. Comerica Banks consistently denied the validity of Amzee's claims. The last letter in the exchange was dated October 4, 1999. That letter reiterated Comerica Banks' denial of liability and was in response to Amzee's "final demand" letter of September 22, 1999. Copies of the correspondence were attached to the affidavit. The affiant further stated that he did not hear again from Amzee until after the default judgment had been granted against Comerica Banks.
The vice-president and senior counsel for Comerica Banks, also working at the Michigan office, acknowledged in his affidavit that service of process was received and referred to him by the corporations' deputy general counsel with the request that he contact outside counsel to coordinate and handle the defense against the lawsuit. He attested that he instructed his secretary to initiate the contact with outside counsel, also a Michigan attorney, and, if necessary, to forward copies of the complaint and summons to him for review. He stated that a facsimile transmission report of May 17, 2000, indicated the documents were transmitted along with a cover sheet directed to outside counsel's firm, and that, consistent with past practices, he expected to hear back from outside counsel regarding the handling of the lawsuit. One consideration in this regard, according to the affidavit, was the selection of Ohio counsel to be retained in connection with the intended defense. This affiant further stated that he did not hear anything more concerning the lawsuit until after the default judgment had been rendered.
Outside counsel for Comerica Banks attested that he did not personally receive the facsimile transmission of May 17, 2000, that his firm's records of incoming facsimiles did not include a record of that transmission, and that he was unaware of the lawsuit until he was advised by his clients that a default judgment had been entered against them.
In a supplemental affidavit, submitted with a reply memorandum in support of the motion to set aside the judgment, the secretary for the vice-president and senior counsel for Comerica Banks stated she "had been instructed to call Mr. Roach [outside counsel] and placed a call to him [but] I was unable to reach him, so I sent him the complaint and cover letter by facsimile." (Exhibit C, paragraph 4, Reply Memorandum of Defendants, filed November 3, 2000.)
Amzee opposed the motion for relief from judgment arguing that Comerica Banks neither set forth a meritorious defense to Amzee's common law claims in its tendered answer nor established that its failure to answer within rule was the product of mistake, inadvertence, or excusable neglect as required by Civ.R. 60(B)(1).
The trial court, in a written decision and entry of December 8, 2000, granted the motion by Comerica Banks, vacated the default judgment and permitted them to file their answer instanter. The trial court recited the requisites for granting relief from judgment as explained in GTE Automatic Electric, Inc. v. ARC Industries, Inc. (1976), 47 Ohio St.2d 146, paragraph two of the syllabus, and commented, consistent with the directive of syllabus three of the GTE opinion, that any doubt should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits. On the issue as to whether or not the failure to answer was the product of mistake, inadvertence, or excusable neglect, the trial court stated:
 * * * There is no question that Defendants should have followed up with outside counsil [sic]. However, taking into consideration all of the facts and circumstances in this case, this Court does not find that Defendants' conduct was a disregard of the judicial system. * * * Since the standard of care for excusable neglect is to be liberally construed with all doubt in favor of the movant, this Court finds that Defendants are entitled to relief under the grounds stated in Civ.R. 60(B)(1). [Decision and Entry journalized December 8, 2000.]
On January 3, 2001, Comerica Banks filed an amended answer asserting affirmative defenses in addition to those averred in the originally tendered answer. On January 12, 2001, Comerica Banks moved for judgment on the pleadings pursuant to Civ.R. 12(C). The motion was granted by the trial court on March 21, 2001.
Amzee appeals and asserts two assignments of error:
FIRST ASSIGNMENT OF ERROR
 The trial court erred in granting defendants' Motion for Judgment on the Pleadings where defendants failed to meet their burden of demonstrating an entitlement to such judgment.
SECOND ASSIGNMENT OF ERROR
 The trial court erred in granting defendants relief from default judgment where defendants failed to meet the requisite showing under Civ.R. 60(B) of entitlement to such relief.
We will address the assignments of error in reverse order.
A reviewing court applies an abuse of discretion standard when it considers a trial court's ruling on a motion for relief from judgment. An abuse of discretion will only be found where the trial court's decision is not supported by the record or is contrary to law. In Re Estate of Daily (1999), Madison App. No. CA99-03-011, at 4. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Wilmington Steel Products, Inc. v. Cleve. Elec. Illum. Co. (1991),60 Ohio St.3d 120, 122; and In re Jane Doe 1 (1991), 57 Ohio St.3d 135. To constitute an abuse of discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Keaton v. Purchase Plus Buyers Group, Inc. (2001), Pike App. No. 01CA657, at 17. This court's role is limited to determining whether or not the trial court abused its discretion and the fact that we may have reached an opposite result will not justify reversing the trial court's decision. Wilmington Steel, supra, at 122.
To prevail on a Civ.R. 60(B) motion for relief from a default judgment, the moving party must show: (1) that it has a meritorious defense to present if the requested relief should be granted; (2) that it is entitled to relief under one of the grounds for relief set forth in Civ.R. 60(B)(1) through (5), inclusive; and (3) that motion is made within a reasonable time after the judgment or order from which relief is sought was granted. GTE, supra, at paragraph two of the syllabus. If the grounds for relief urged are, as in this case, among those identified in the first three subsections of Civ.R. 60(B), the motion for relief from judgment must be made not more than one year after the judgment or order. Id. These bases for relief are independent of one another, and the moving party must demonstrate all three for relief from judgment to be justified. Id. at 151, citing Universal Film Exchanges v. Lust (C.A. 4, 1973), 479 F.2d 573.
Concerning the first showing required under the GTE decision in support of relief from judgment, a proffered defense is meritorious if it is not a sham and when, if true, it states a defense in part, or in whole, to the claims for relief set forth in the complaint. The Pool Man, Inc. v. Rea (1995), Franklin App. No. 95APG04-438, at 4-5. Mere general denials in an answer do not allege a meritorious defense for Civ.R. 60(B) purposes, id. at 5; but the adequately pleaded assertion of one or more affirmative defenses will raise genuine issues of material fact in relation to the averments in the complaint and, therefore, be meritorious. A moving party's burden is only to allege a meritorious defense, not to prove it will ultimately prevail on the merits. In Globe American Casualty Co. v. Lindsay (2001), Franklin App. No. 01AP-176, at 5-6, for example, the defendant's denial of fault and allegation of negligence by the plaintiff's insureds was sufficient to satisfy that burden.
Here, we find that the specific denials and affirmative defenses asserted by Comerica Banks satisfy the first requirement articulated in the GTE decision. As raised in the tendered answer,[1] the defenses alleged reasonably relate to the circumstances and claims for relief set forth in the complaint. If proved, the defenses asserted could defeat one or more of those claims for relief. Contrary to Amzee's argument that Comerica Banks failed to demonstrate meritorious defenses to all of its claims, it suffices that a meritorious defense, either partial or complete, is raised. For example, in Syphard v. Vrable (2001),141 Ohio App.3d 460, 463-464, the defendant failed to assert a claimed defense of consent, but did adequately state a defense in relation to the amount of damages sought by the plaintiff. The court held that a dispute as to the proper amount owed affects the validity of a judgment and, thus, constitutes a meritorious defense for the purpose of satisfying that portion of the GTE requirements. Id.
In relation to the second prong of the GTE test, the failure in this case by three in-house counsel employed by Comerica Banks to follow-up in any fashion to assure that the intended defense against Amzee's claims was being prepared clearly constitutes neglect that is imputable to their employer. GTE, supra, at 153. We are concerned that none of these lawyers, knowing that local counsel would need to be retained to assist in the defense, made any effort to accomplish that important initial step in the preparation of a defense against this Ohio lawsuit. As noted by the Ohio Supreme Court in Griffey v. Rajan (1987), 33 Ohio St.3d 75, 79, an assertion that the neglect to timely respond was "due to `a breakdown in routine channels of communication' * * * is more an admission of neglect than an excuse for it."
We must next consider whether the neglect by Comerica Banks is excusable or inexcusable, taking into consideration all of the surrounding facts and circumstances, including, non-exclusively, the following factors: (1) whether the defendant attempted to promptly notify the person or entity intended to be primarily responsible for conducting the defense; (2) the amount of time that elapsed between the last day for filing a timely answer and the granting of the default judgment; (3) the amount of the judgment granted; and (4) the experience and understanding of the defendant concerning matters of litigation. Colley v. Bazell (1980), 64 Ohio St.2d 243, 249.
The term "excusable neglect" has been called an "elusive concept * * * difficult to define and to apply." Kay v. Marc Glassman, Inc. (1996),76 Ohio St.3d 18, 20. Ohio courts have generally held that relief from default judgment may be granted on the basis of excusable neglect when service is properly made on a corporation, but a corporate employee fails to forward the summons and complaint to the appropriate person. Clark v. Marc Glassman, Inc. (2001), Cuyahoga App. No. 78640, at 6-7 (citations omitted). Similarly, a default judgment is generally vacated where the defaulting party has notified its insurer or other representative of the commencement of a lawsuit and has relied to its detriment upon the representative's undertaking of the defense. Colley, supra, at 247 (citations omitted).
The burden is upon the movant to demonstrate that the interest of justice demands the setting aside of a judgment normally accorded finality. Danbert, Inc. v. City of Dublin (2001), Franklin App. No. 01AP-255, at 4. Neglect will not be found to be excusable where it amounts to a complete disregard of the judicial system. Id. at 7, citing Kay, supra. Disregard for the judicial system and for the rights of an opposing party does not necessarily mean an intentional disregard. Griffey, supra, at 80.
There are many examples of circumstances where an appellate court concluded that the rationalization offered by the defaulting party for failing to timely file a responsive pleading did not constitute "excusable neglect" under Civ.R. 60(B)(1). In Danbert, supra, plaintiff's counsel failed to respond to the defendant's motion to dismiss, alleging that he had oftentimes during a five-to-six-month period not received some of his regular office mail, including pleadings. Counsel contended that he did not receive a copy of the motion to dismiss. In deciding that the trial court did not abuse its discretion in denying plaintiff's motion for relief from a judgment dismissing the complaint, this court observed:
 * * * Plaintiff, apparently aware of improper mail delivery, made no effort to check the court file or to do anything with the case. Counsel who is not receiving mail service properly can not just sit on his hands and do nothing. [Danbert at 6.]
See, also, Woodson v. Carlson (2001), Summit App. No. 20206 (failure to comply with an extended answer deadline due to a change in attorney's key office personnel was a complete disregard of the judicial system and the granting of defendant's motion for relief from judgment was, thus, an abuse of the trial court's discretion); Globe American Casualty (failure by a pro se litigant to file a timely answer because he did not understand the concept of a default judgment or the consequences of a failure to file his answer was not excusable neglect and the granting of defendant's motion for relief from judgment was likewise an abuse of the trial court's discretion); and Gillmore v. Tirbovich (2001), Stark App. No. 2001CA00096 (failure to timely answer as the result of the reliance by the defendant's insured upon the calculation of the answer date by a legal secretary who was inaccurately determined the response date was not "excusable neglect").
Regardless of ample authority to support a different result had the trial court chosen, in the exercise of its discretion, to deny the motion by Comerica Banks for relief from judgment, the court recited that its decision was reached after "taking into consideration all the facts and circumstances in this case." The consideration of all such circumstances by the trial court follows the directions set forth in Colley. Among those circumstances present in this case were a showing that the parties had engaged in a long-term dialogue concerning liability prior to the filing of the lawsuit, the amount of the default judgment, and the inclusion of a large award of interest by default without a clear showing of entitlement[2] and without a hearing.[3] The Supreme Court observed in Colley, "[m]atters involving large sums should not be determined by default judgments if it can reasonably be avoided." Colley, supra, at fn. 5.
As to the third prong, the motion for relief from judgment was filed well within the one-year period (seventy-seven days after the default judgment was rendered). Given time for notice and investigation of circumstances, there was no abuse of discretion in finding that the motion was filed within a reasonable time.
We do not condone the manner in which Comerica Banks and their respective counsel handled this case. Nonetheless, we share the preference, particularly where large sums of money are at issue, for deciding cases upon their merits instead of by default. Furthermore, we cannot say that the trial court abused its discretion by finding that the failure to respond to the complaint in timely fashion did not amount to "disregard of the judicial system" or by granting Comerica Banks relief from the default judgment. See Scruggs v. Value City Furniture (2000), Geauga App. No. 99-G-2259, at 8. We do not find that the trial court's decision manifests an attitude that is unreasonable, arbitrary or unconscionable. Wilmington Steel, supra. The decision does not defy logic or judgment, and it does not evidence a perversity of will, or appear to be the product of passion or bias. Keaton, supra. Amzee's second assignment of error is overruled.
With respect to the first assignment of error, we do not have the benefit of a fully written decision by the trial court. The judgment entry granting the motion by Comerica Banks for judgment on the pleadings simply found good cause to grant the motion and to enter judgment accordingly as to all of Amzee's claims for relief. Nonetheless, this court must review the issues raised in the first assignment of error de novo without deference to the determination by the trial court. Fontbank, Inc. v. CompuServe, Inc. (2000), 138 Ohio App.3d 801, 807.
The question to be answered in such de novo review is whether or not the moving party is entitled to judgment as a matter of law based upon the non-existence of material factual issues as indicated by the pleadings. Thomas v. Byrd-Bennett (2001), Cuyahoga App. No. 79930, at 3, citing Drozeck v. Lawyers Title Ins. Corp. (2000), 140 Ohio App.3d 816,820. Any party may move for judgment on the pleadings after the pleadings are closed, but within such time as not to delay the trial. Civ.R. 12(C). The rule requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law. State ex rel. Midwest Pride IV, Inc. v. Pontious (1996), 75 Ohio St.3d 565,570, citing Burnside v. Leimbach (1991), 71 Ohio App.3d 399, 403.
Any court deciding such a motion must limit its consideration solely to the allegations in the pleadings and any writings attached to those pleadings, and it may not consider other evidentiary materials. Workman v. Franklin County (2001), Franklin App. No. 00AP-1449, at 6. Judgment on the pleadings is only appropriate where the court not only construes the material allegations in the pleadings with all reasonable inferences drawn in favor of the non-moving party as true, but also finds beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle it to relief. Midwest Pride, supra.
In relation to the adequacy of a complaint itself, Civ.R. 8(A) establishes the necessities for pleading a claim for relief, as follows: It "shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Leichliter v. Natl. City Bank of Columbus (1999), 134 Ohio App.3d 26, 31. Claims for relief may be stated in the alternative [Civ.R. 8(E)(2)] and Civ.R. 84 expressly approves concise pleadings in the form suggested thereunder. The objects of Civ.R. 8(A) are to provide the defendant fair notice of the claims and an opportunity to respond to them. Id., citing Fancher v. Fancher (1982), 8 Ohio App.3d 79, 83. The plaintiff is neither required to plead the legal theory for recovery nor bound by any particular theory. The facts of the claim, as developed by the proof, establish the right to relief. Id., citing Illinois Controls, Inc. v. Langham (1994),70 Ohio St.3d 512, 526. The issue in ruling on a Civ.R. 12(C) motion becomes whether Amzee is entitled to the opportunity to present evidence to prove its claims for relief, not whether it will prevail on one or more of them. See Leichliter, supra, at 31.
While the assertion of affirmative defenses may raise genuine issues of material fact in relation to the averments in the complaint, a motion for judgment on the pleadings cannot be used to obtain an adjudication of the validity of those defenses unless the validity can be determined solely from the allegations in the pleadings. Epperly v. Medina City Bd. of Edn. (1989), 64 Ohio App.3d 74, 75. For example, a motion to dismiss, pursuant to Civ.R. 12(B)(6), on statute of limitations grounds should not be granted unless the complaint on its face shows that the action is time-barred. Ware v. Kowars (2001), Franklin App. No. 00AP-450, at 8. For there to be a conclusive showing in that regard, the complaint must demonstrate the applicable statute of limitations and an absence of factors that would toll the statute or make it inapplicable. Id., citing Tarry v. Fechko Excavating, Inc. (1999), Lorain App. No. 98 CA 7180.
The alternative claims for relief asserted by Amzee comply with the requirements of Civ.R. 8 and the claims are stated in terms consistent with the suggestions as to form included by reference in the provisions of Civ.R. 84. Amzee argues that its claims for relief are based in the common law and that the assertion by Comerica Banks of defenses grounded in the negotiable instruments provisions of the Uniform Commercial Code (R.C. Chapters 1301., 1303., and 1304.) do not operate as an avoidance of, or otherwise defeat, those claims. By contrast, Comerica Banks assert that, because the payments at issue were made by check, the Uniform Commercial Code governs to the exclusion of common law principles. Comerica Banks rely upon the broad statements by the United States District Court for the Southern District of Ohio, Western Division, that "when the Ohio General Assembly has codified the law on a subject, the statute governs to the exclusion of the common law, unless there is clear legislative intent that the statutory provisions are merely duplicative," and that "[t]here is nothing in the Uniform Commercial Code which indicates that the Ohio General Assembly intended its provisions to be duplicative of the common law it supplanted." Baggott v. Piper Aircraft Corp. (S.D.Ohio 1999), 101 F. Supp.2d 556, 561, citing Bolles v. Toledo Trust Co. (1944), 144 Ohio St. 195.
The pleadings make clear that defendants were recipients of payments upon a Visa credit card account in the name of Patricia Bragg, an employee of Amzee. The payments were made by checks written upon the account of Amzee. Amzee was not a patron of Comerica Banks, nor is there any indication that Comerica Banks had any actual knowledge that the checks used by Patricia Bragg were stolen, as alleged by Amzee, nor that she had no authority to use Amzee checks to pay her Visa account. Between September 1994 and December 1997, Bragg tendered thirty-five checks totaling $191,879. 20 to Comerica Banks that were applied to Bragg's personal Comerica Banks Visa account debt. Those checks were returned to Amzee and it was not until October 28, 1998, that Amzee advised Comerica Banks about its discovery of its employee's wrongdoing. Thus, it was about thirteen months after the last check of Amzee was applied to Bragg's account that Amzee made any complaint to Comerica Banks. When Comerica Banks refused to acknowledge the validity of Amzee's claims, a lawsuit was finally filed on May 5, 2000. As previously noted, Amzee asserted five common law claims for relief against Comerica Banks: (1) for money had and received; (2) for money paid by mistake; (3) for conversion; (4) for negligence; and (5) for unjust enrichment.
Assuming it to be a fact that Amzee's employee, Patricia Bragg, stole improperly used checks of Amzee to pay her personal debts, the issue is under the law who suffers from her misconduct, Comerica Banks or Amzee Corporation.
Since payment to Comerica Banks was made by the use of checks, a negotiable instrument, the Uniform Commercial Code ("UCC") is the first place to look to ascertain the responsibility of the parties.
R.C. 1301.03, a provision of the UCC, provides as follows:
 Unless displaced by the particular provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code, the principals of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement their provisions.
As pointed out in Baggott, the UCC is a codification of the principles of the law merchant, albeit in a somewhat altered form. In conjunction with the law of negotiable instruments, the UCC has set forth liabilities and responsibilities that are different than existed at common law. However, as stated in Baggott, "there is nothing in the Uniform Commercial Code that indicates that the Ohio General Assembly intended its provisions to be duplicative of the common law it supplanted." Id. at 561.
If the UCC exclusively controls the rights and liabilities in this case, whether the checks were stolen and issued without permission of Amzee and whether Comerica Banks were at fault in failing to ascertain that the numerous five to six thousand dollar checks issued on Amzee's account and made applicable to the personal Visa account of Patricia Bragg were unauthorized by Amzee, there is no redress available to Amzee. Amzee points to no provision in the UCC that provides relief to it, despite the numerous provisions governing rights and liabilities contained in the UCC.
Recognizing this problem, appellant argues that the UCC does not provide the exclusive remedy and that the various common law claims previously outlined continue in force despite the adoption of the UCC.
In Bolles, paragraph thirteen of the syllabus, the Ohio Supreme Court stated: "Where the General Assembly has codified the law on a subject, such statutory provisions are to govern to the exclusion of the prior non-statutory law unless there is a clear legislative intention expressed or necessarily implied that the statutory provisions are merely cumulative." Thus, unless there is clear legislative intent that the UCC is merely cumulative to the common law, the UCC governs to the exclusion of the common law.
R.C. 1301.02(A), (B)(1) and (B)(3)[4] point out the strong policy reasons why appellant cannot avoid the requirements of the UCC. The UCC was designed to provide reliability, uniformity and certainty as to the rights and liabilities pertaining to negotiable instruments. In order for the UCC to be effective, parties in commercial transactions must be able to rely upon the remedies the UCC provides. Halla v. Norwest Bank Minnesota NA (1999), 601 N.W.2d 449, 451. In Halla, the court held that the UCC does not permit a claimant to bring a common law claim for conversion of a negotiable instrument, interpreting a provision of Minnesota statutes identical to that of Ohio. In Arkwright Mutl. Ins. Co. v. State Street Bank Trust Co. (1998), 703 N.E.2d 217, 220, the court held that a strong policy of commercial finality requires that common law negligence claims be supplanted by the UCC.
If parties are permitted to avoid the remedies of the UCC and plead common law causes of action, the reliability, uniformity and certainty of the UCC disappears. In many cases, a pleader could rely on a common law action to avoid the clear mandates of the UCC, virtually eliminating the objectives for adopting a uniform governing commercial transactions.
Use of common law form causes of action would upset the comprehensive loss allocation schemes provided by the UCC when a forged check enters the negotiation process. Bank Polska Kasa Opieki, S.A. v. Pamrapo Sav. Bank, S.L.A. (1995), 909 F. Supp. 948, 953-956. In Bank Polska Kasa Opieki, the court held that permitting the drawer of a check to bring common law claims would violate the intention of the drafters of the UCC that a drawer must seek recourse from the drawee bank. If the drawer is permitted to bring common law claims, the drawer could circumvent the UCC defenses that a drawee bank may assert against the drawer.
Both parties suffer damages if they lose this case. It is not a case where the equities are one-sided. Amzee was actually in the better position to avoid repetitive losses by examining its returned checks. Yet it was years later before Amzee discovered the thefts. Comerica Banks took facially valid checks as payment for a valid debt owed it by its customer, Patricia Bragg, and applied the checks to that debt. Amzee was not a customer of Comerica Banks and it was not Comerica Bank's duty to inquire into why Amzee was paying her debt. If the checks are belatedly dishonored, Comerica Banks has tendered credit and lost payments due to the failure of Amzee to advise them of the invalidity of the payment. Amzee may also have recourse, if timely asserted, against the bank where their account was placed. In short, this is not a case where even the equities favor Amzee.
Appellant's argument, that the UCC does not apply because appellant's claims are based upon money and not appellant's checks, lacks merit. Appellant's claims are based upon the fact that one of its employees stole its checks, forged a signature on these checks and negotiated the checks to pay a personal debt to Comerica Banks. The fact that the checks were converted into money is immaterial as far as the application of the UCC is concerned; one cannot avoid the UCC by use of this argument.
We conclude that the common law claims asserted by appellant in their entirety are supplanted by the provisions of the UCC and that there is no liability on the part of Comerica Banks for return of the monies gained through the acceptance of forged checks applied to the account of Patricia Bragg. Appellant's first assignment of error is overruled.
Appellant's assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
BRYANT and LAZARUS, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The affirmative defenses alleged in the originally tendered answer are: that the complaint fails to state a claim upon which relief may be granted; that plaintiff's damages are the proximate result of the actions of those not within defendants' control; that the claims are barred by the applicable statute of limitations; that the claims are barred by defendants' status as holders in due course; and that the claims are barred by plaintiff's own negligence. We do not consider the additional defenses set forth in the amended answer later filed by Comerica Banks for the reason that it was not before the trial court at the time it rendered the decision subject of the second assignment of error herein.
[2] Amzee contends that its conversion cause of action arose at the time it demanded return of the proceeds of the forged checks, a position that is not wholly consistent with its computation of interest from as many as four years earlier.
[3] See Persky, Shapiro, Salim, Esper, Arnoff Nolfi Co., L.P.A. v. Guyuron (2000), Cuyahoga App. No. 77249, at 28, in which the appellate court, while acknowledging that R.C. 1343.03 requires a post-judgment hearing prerequisite to awarding prejudgment interest under the Uniform Commercial Code, held that common law principles governing the awarding of prejudgment interest in a conversion action survive the enactment of R.C. 1343.03. An award of prejudgment interest less than the amount sought by the plaintiff and calculated from a date after the conversion occurred was upheld as falling within the trial court's discretion to award such interest as part of the compensatory award.
[4] {¶ a} R.C.1301.02, entitled Purposes; rules of construction; variation by agreement provides, as pertinent, as follows:
 {¶ b} (A) Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code shall be liberally construed and applied to promote their underlying purposes and policies.
 {¶ c} (B) Underlying purposes and policies of those chapters are the following:
 {¶ d} (1) To simplify, clarify, and modernize the law governing commercial transactions;
 {¶ e} (2) To permit the continued expansion of commercial practices through custom, usage, and agreement of the parties;
{¶ f} (3) To make uniform the law among the various jurisdictions.
 {¶ g} (C) The effect of the provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code may be varied by agreement, except as otherwise provided in those chapters and except that the obligations of good faith, diligence, reasonableness, and care prescribed by those chapters may not be disclaimed by agreement, but the parties by agreement may determine the standards by which the performance of those obligations is to be measured if the standards are not manifestly unreasonable.