Lisa L. BRADLEY, Trustee for the Sally G. Moore and Robert A. Moore Revocable Living Trust, Appellant,

v.

**FIRST NATIONAL BANK OF WALKER, NA, Respondent.**

No. A05–634.

Court of Appeals of Minnesota.

March 28, 2006.

Steven R. Hedges, James H. Gilbert Law Group, P.L.L.C., Minnetonka, MN; and Keith J. Broady, Timothy C. Matson, Abdo, Abdo, Broady & Satorius, P.A., Minneapolis, MN, for appellant.

David R. Marshall, Ryan T. Murphy, Fredrikson & Byron, P.A., Minneapolis, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; RANDALL, Judge; and CRIPPEN, Judge.*

## OPINION

MINGE, Judge.

Appellant asserts that the district court erred by applying section 3–307 of the Uniform Commercial Code (UCC) (Minn. Stat. § 336.3–307 (2004)) and its three-year limitation period (Minn.Stat. § 336.3–118(g) (2004)) to her claim rather than section 8 of the Uniform Fiduciary Act (UFA) (Minn.Stat. § 520.08 (2004)) and the general Minnesota six-year statute of limitations (Minn.Stat. § 541.05 (2004)), and by rejecting her common law claims.[1] Further, appellant argues that the district court abused its discretion by considering respondent's summary judgment motion and statute of limitations defense. Because appellant had adequate notice and opportunity to respond to the statute of limitations claim in the summary judgment proceeding, and because the UCC applies to appellant's claim and preempts her common law claims, the limitation period in the UCC applies. We affirm.

## FACTS

Appellant Lisa L. Bradley is Trustee for the Sally G. Moore and Robert A. Moore Revocable Living Trust. Sally and Robert Moore established the trust and opened a trust checking account at respondent First National Bank of Walker, N.A. When Robert died, Sally amended the trust agreement and appointed appellant Bradley, a tax professional in Arizona, as successor trustee. Bradley became an authorized signer on the trust account and could conduct transactions on behalf of the trust.

In 1996, Sally again amended the trust agreement, appointing Minnesota attorney Glenn Smith as co-successor trustee with Bradley. The trust agreement provided that the signature of only one trustee was required to withdraw funds from the trust account. When Sally died in September 1996, Bradley and Smith assumed the

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. For ease of reference, the UCC and UFA provisions and the parallel provisions of the Minnesota Statutes (Minn.Stat. §§ 336.1–101 to 336.10–105 (2004) and Minn.Stat. §§ 520.01 to 520.13 (2004)) will be referenced with the simple uniform act citation, without the chapter number or name "Minnesota." In the case of UCC Article 3, references are to the revised article which was enacted in Minnesota in 1992. 1992 Minn. Laws ch. 565, § 35, at 1816. If Minnesota adopted a variation of the uniform law, the full Minnesota citation will be used. If the pre–1992 version is cited, it will be identified accordingly.

trust's administration. Bradley forwarded income from trust assets in Arizona to Smith in Minnesota. She allowed Smith to deal with the majority of the daily trust duties, including oversight of its bank accounts.

Bradley noted that Smith missed several tax-filing deadlines and found him difficult to contact. In October 1998, Bradley contacted trust beneficiaries and learned that Smith had not made any distributions. Bradley examined records of the trust account at First National and determined that Smith had depleted the trust account by writing over 80 checks payable to himself personally for approximately $550,000. Smith had deposited these checks into his personal account at Americana Bank (now Excel Bank); they cleared through the banking system and were honored by First National.

On July 13, 2000, Smith pleaded guilty to federal charges of mail fraud and monetary transactions involving criminally-derived property. The federal court ordered Smith to pay $530,000 in restitution. After payment of $61,750 by Smith and $100,000 by the Minnesota client security fund, the trust was still short $368,250. On July 25, 2003, Bradley initiated suit against First National, asserting claims under the UFA, as well as common law claims in negligence and contract. First National moved for summary judgment, arguing that the UCC applied and that Bradley failed to make a cognizable claim under section 3–307(b). Opposing summary judgment, Bradley continued to argue that the UFA applied. In its reply memorandum, First National asserted that because the UCC provisions governed, the UCC's three-year statute of limitations barred her claim.

At the hearing on First National's summary judgment motion, Bradley objected to consideration of the statute of limitations argument. She claimed it was not timely raised in the summary judgment proceeding. The district court granted First National's summary judgment motion, finding that both the UFA and UCC applied to Bradley's claims, that the UCC superseded the UFA, that the UCC's limitation period (section 3–118(g)) controlled, and that the time for bringing an action had expired. The district court also found that the UCC preempted Bradley's common law claims. Bradley appeals.

## ISSUES

I.  Did the district court err as a matter of law in applying section 3–307(b) of the UCC, and its accompanying statute of limitations, instead of section 8 of the UFA?

II. Does application of the UCC preempt Bradley's common law claims?

III. Did the district court abuse its discretion in deciding the statute of limitations question?

## ANALYSIS

On appeal from summary judgment, the court must determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). Moreover, the court will view the evidence in the light most favorable to the nonmoving party. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). The district court's legal conclusions will be reviewed de novo. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998).

### I.

The first issue is whether the district court erred as a matter of law in applying the UCC, and the accompanying shorter, three-year statute of limitations,

instead of the UFA and the general six-year statute of limitations. Deciding which of these two uniform acts applies requires evaluation of several considerations. At the outset, we apply principles of statutory construction. The most important principle and the starting point is the language of the various statutes. *See* Minn.Stat. §§ 645.08, 645.16 (2004); *see also Heaslip v. Freeman*, 511 N.W.2d 21 (Minn.App.1994), *review denied* (Minn. Feb. 24, 1994). If laws conflict, the court should try to construe them together to reconcile the conflict. Minn.Stat. § 645.26 (2004); *In re Appeal of Crow Wing County Attorney*, 552 N.W.2d 278, 280 (Minn. App.1996), *review denied* (Minn. Oct. 29, 1996); *see Caldwell v. City of Minneapolis*, 486 N.W.2d 151, 156 (Minn.App. 1992) ("[W]ithout strong evidence that the two provisions are irreconcilable, implied repeal of a prior enactment by a later enactment is not favored."), *review denied* (Minn. Aug. 4, 1992). If, however, the two provisions are inherently inconsistent and there is no way to harmonize them, then the court will apply the canons of construction. *Barton v. Moore*, 558 N.W.2d 746, 751–52 (Minn.1997). *See generally* Minn. Stat. §§ 645.001–.51 (2004).

Both the UFA and the UCC deal with the general subject matter of bank liability for fiduciary fraud in writing checks.[2] The UFA "relieves banks of their common law duty of inquiring into the propriety of each transaction conducted by a fiduciary." *In re Lauer*, 98 F.3d 378, 383 (8th Cir.1996). The UFA expressly provides that if the fiduciary draws a check upon the account of the principal, the bank may pay the check without being liable to the principal, unless the bank acts in bad faith or with actual knowledge of a breach of fiduciary duty. UFA § 8. Here, Bradley alleges that First National acted in bad faith by honoring numerous checks that Smith made out to himself personally. UFA § 8 clearly applies to our situation. The UFA does not contain an independent statute of limitations. Therefore, claims arising under the UFA are subject to a six-year statute of limitations. *See* Minn.Stat. § 541.05 (providing that a six-year statute of limitations applies where no other limitations period is expressly prescribed).

The statutory language of the UCC is not as focused. Under the UCC, if an instrument is taken from a fiduciary, the taker knows the person is a fiduciary, and the principal claims a breach of fiduciary duty, four rules apply. UCC § 3–307(b)(1)—(4). None of the four rules use the word "bank;" however, the phrase "taken from a fiduciary" is used, and the word "taker" is used repeatedly. *Id.* Although "taker" is an undefined term in the UCC, it certainly applies to banks that directly receive the checks from the fiduciary. *See* UCC § 3–307, cmts. 1–5 (containing numerous references to banks). It is less clear that it applies to a bank that is not the initial "taker" from the fiduciary. That is the situation with First National in the matter before us. The question is whether the clarity of the UFA in covering our situation precludes application of the UCC's three-year statute of limitations.

### A. UCC Comments

The UFA's provisions are intertwined with the UCC and must be applied in that context. In this regard, the UCC comments contain the following statement:

> Section 3–307 states rules for determining when a person taking an instrument has notice of the claim which will pre-

---

**2.** This subject is analyzed in Marion W. Benfield, Jr. & Peter A. Alces, *Bank Liability for Fiduciary Fraud*, 42 Ala. L.Rev. 475 (1991).

vent assertion of rights as a holder in due course. It also states rules for determining when a payor bank pays an instrument with notice of breach of fiduciary duty. UCC § 3–307 cmt. 2. First National is the payor bank. This general recognition of the application of the section to payor banks is significant.

### B. First National as a "Taker"

In resolving the question of the extent to which UCC applies, we must determine whether First National can be considered a "taker" or to have "taken" the check. We note that the concept of "taker" is flexible. The "taker" of an instrument is akin to the "holder," a statutorily-defined term. *See* UCC § 1–201(b)(21). The "holder" takes the instrument or check from the maker and, after the initial transfer from the first holder or taker, transfers the check to subsequent holders and takers.[3] UCC § 3–307 does not require that every "taker" in section 3–307 deal directly with the fiduciary. It only requires that there be an initial transaction with the fiduciary. *See* UCC § 3–307(b)(i).

Furthermore, we should not be confused by multiple labels. Any entity in the chain of possession of the check may have several titles. For example, in the case before us, Smith initially deposited the check with the Americana (Excel) Bank. Americana was the initial "taker" and "holder," and it was also the "depository bank." *See* UCC §§ 1–201(b)(21), 4–105(2). First National is the "payor bank" and the "drawee" of the draft. *See* UCC §§ 3–103(a)(4), 4–104(a)(8), 4–105(3). In addition, First Na-

tional "took" the check in the check-clearing system, was the bank from which the funds would ultimately be paid, and was the last holder or taker before returning the check to the Moore Trust. This suggests First National is a "taker" within section 3–307(b).

### C. Comprehensiveness of the UCC

Another consideration is the comprehensive nature of the UCC. Only one section of the original version of the UCC briefly addressed a bank's notice of breach of fiduciary duty. *See* Minn.Stat. § 336.3–304(2), (4)(e) (repealed 1992). That section is the precursor of section 3–307. UCC § 3–307, cmt. 1. Section 3–307 of the revised Article 3 more comprehensively addresses the problem of fiduciary fraud[4] and is a part of the broad UCC framework for dealing with negotiable instruments and bank deposits and collections. In a very real sense, the UCC occupies the field.[5] One of the principles of statutory construction addresses this situation as follows:

**IMPLIED REPEAL BY LATER LAW.**

When a law purports to be a revision of all laws upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former law and is intended as a substitute for such former law, such law shall be construed to repeal all former laws upon the same subject. When a general law purports to establish a uniform and mandatory system covering a class of subjects, such law shall be construed to

---

**3.** The law regarding bank deposits and collections is also contained in UCC Article 4.

**4.** *See* Benfield & Alces, *supra*, at 542–49.

**5.** We note that one of the canons of construction provides that more specific status prevail

over general provisions. *See* Minn.Stat. § 645.26, subd. 1. Although this may initially favor application of the UFA, it does not actually resolve the conflict in this case where the UCC constitutes a comprehensive statutory framework.

repeal preexisting local or special laws on the same class of subjects. In all other cases, a later law shall not be construed to repeal an earlier law unless the two laws are irreconcilable.

Minn.Stat. § 645.39. UFA § 8 deals with a matter that is also the subject of UCC § 3–307. To have parts of section 8 survive and parts displaced leads to confusion and lack of predictability in the law. This weighs in favor of interpreting UCC § 3–307(b) to govern this situation.[6]

## D. UCC Repealer Provisions

The UCC is generally the governing law in any area where it conflicts with prior law. When Minnesota adopted the UCC in 1965, our version of UCC § 10–102 specifically repealed UFA §§ 4, 5 and 6. Minn.Stat. § 336.10–102(1) (1965). In their place we enacted Minn.Stat. § 336.3–304(2) and (4)(e) (1990), which addresses the same policies. Minn.Stat. Ann. § 336.3–304 Minn. code cmt., U.C.C. cmt. (West 1966). Although no additional specific repealer language was included when revised Article 3 was adopted, the general repealer section continued. Minn.Stat. § 336.10–102(1) (1992). It states that, "[e]xcept as provided in the following section, all laws and parts of laws inconsistent with this chapter are hereby repealed." *Id.* This places the sections of the UFA that have not been specifically repealed in an ambiguous status unless they clearly are not duplicated by the UCC. Principles of statutory construction direct that we consider laws that are later in point of time to prevail when in conflict with earlier laws. Minn.Stat. § 645.26, subd. 4.

## E. Reasonableness

Minnesota statutes instruct the courts that the legislature does not intend unreasonable results. Minn.Stat. § 645.17(1), subd. 1. If the UCC statute of limitations does not apply in this case because First National is a payor bank that did not deal personally with or directly "take" the checks in question from Smith, then First National would be subject to the longer six-year statute of limitations. However, if First National had been the depositary *and* payor bank and had dealt directly with Smith in his deposit of the checks, First National would be subject to the shorter, three-year statute of limitations. It is unreasonable to have a longer statute of limitations and greater exposure when a bank defendant plays a more limited role in a transaction, and a shorter, more protective statute if the bank has greater involvement. Similarly, the possibly limited role of constructive knowledge and bad faith under the UCC compared to the UFA would then provide narrower liability/exposure for the depositary/payor bank than for the bank that only acted as the payor. This inconsistency is not logical or reasonable.

## F. Other States

Bradley argues that a consideration favoring the continued application of UFA is consistency in interpretation of the UCC, and points to the decision of *Coeur d'Alene Mining Co. v. First Nat'l Bank of N. Idaho*, 118 Idaho 812, 800 P.2d 1026 (1990). We recognize that there is a policy favoring consistent judicial interpretation and application of the uniform laws. *See* Minn. Stat. § 645.22; UCC § 1–103(a)(3). In *Coeur d'Alene Mining*, the Idaho Supreme

**6.** Given the myriad of controversies that may arise under a statute, the lack of broader briefing on the issue of the future status of UFA § 8, and the limited role of this court, we do not reach the question of the application of that section in situations not before us in this proceeding.

Court examined UFA § 9 and the earlier version of UCC § 3–304(2), found that that earlier version of the UCC was consistent with the UFA, and concluded that the result would be the same under both statutes. 118 Idaho at 818–19, 800 P.2d at 1032–33. However, *Coeur d'Alene Mining* is based on the original draft of Article 3 of the UCC. *Id.* As previously noted, the original section 3–304 has been expanded substantially in the current section 3–307 and it is not clear the Idaho court would have reached the same conclusion under the current law. Furthermore, since the Idaho court found the two provisions had the same meaning and lead to the same conclusion, there was no difference in the result. In this sense, it was a false conflict. *Coeur d'Alene Mining* is not helpful in resolving our case.

In sum, although we recognize that this decision is not without countervailing considerations, we conclude the UCC pervasively occupies this field of law and that the district court properly concluded that the UCC's three-year statute of limitations barred Bradley's claim.

## II.

The second issue is whether the UCC preempts Bradley's common law claims. Although Minnesota courts have yet to address specifically whether UCC Article 3 bars common law claims, case law points in that direction. *See Hapka v. Paquin Farms,* 458 N.W.2d 683, 688 (Minn.1990) (holding that Article 2 of the UCC preempts common law claims); *Hedged Inv. Partners v. Norwest Bank Minn.,* 578 N.W.2d 765, 770–71 (Minn.App. 1998) (holding that Article 4A of the UCC preempts common law claims where they are inconsistent or duplicative). *But see* Minn.Stat. § 604.10 (2004) (providing that where economic loss doctrine applies, UCC Article 2 does not preempt common law claims).

The statute itself demonstrates that the legislature intended for it to be a comprehensive liability scheme. "Section 3–307 is intended to clarify the law by stating rules that comprehensively cover the issue of when the taker of an instrument has notice of breach of a fiduciary duty and thus notice of a claim to the instrument or its proceeds." UCC § 3–307, cmt. 1. In addition, the Minnesota Supreme Court has indicated that it favors an approach which recognizes the comprehensive, and exclusive, liability scheme of the UCC. *Superwood Corp. v. Siempelkamp Corp.,* 311 N.W.2d 159, 162 (Minn.1981) ("To allow tort liability in commercial transactions would totally emasculate these provisions of the U.C.C. Clearly, the legislature did not intend for tort law to circumvent the statutory scheme of the U.C.C."), *overruled on other grounds by Hapka v. Paquin Farms,* 458 N.W.2d 683 (Minn.1990).

This court has stated that "the Minnesota Supreme Court has emphasized the value of maintaining an exclusive set of remedies for commercial transactions.... We see no reason to sacrifice the certainty and consistency of the U.C.C. remedies to preserve common law remedies for conversion of negotiable instruments." *Halla v. Norwest Bank Minn., N.A.,* 601 N.W.2d 449, 451 (Minn.App.1999), *review denied* (Minn. Dec. 14, 1999). UCC Article 3 covers the conversion of negotiable instruments, which the court addressed in *Halla.* UCC § 3–420(a). Although dealing with a different section of Article 3, we conclude that the same reasoning is applicable in the instant case and that the UCC preempted Bradley's common law negligence and contract claims. This result is consistent with and reinforces the conclusion we reached previously with respect to

the relationship between the UCC and the UFA in this case.

## III.

The final issue is whether it was improper for the district court to consider First National's UCC statute of limitations defense. This is partly an issue of prejudice and partly an issue of compliance with rules. Although an adverse decision on the merits is obviously prejudicial, prejudice is a question of fundamental fairness. Prejudice may be demonstrated by lack of notice, procedural irregularities, or lack of a meaningful opportunity to respond to the motion. *Septran, Inc. v. Indep. Sch. Dist. No. 271*, 555 N.W.2d 915, 920 (Minn.App. 1996), *review denied* (Minn. Feb. 27, 1997). Bradley argues that First National first raised the defense in its reply memorandum in support of summary judgment and, therefore, Bradley lacked a meaningful opportunity to respond. Minn. R. Gen. Pract. 115.03(c) governs the procedures applicable to dispositive motions: "The moving party may submit a reply memorandum, limited to new legal or factual matters raised by an opposing party's response to a motion...." Unresponsive, novel legal arguments should not be considered if part of the moving party's reply memorandum.

The statute of limitations is an affirmative defense. Minn. R. Civ. P. 8.03. "An affirmative defense must be pleaded specifically and the failure to do so results in a waiver of the defense." *Rhee v. Golden Home Builders, Inc.*, 617 N.W.2d 618, 621 (Minn.App.2000) (reversing the district court where it allowed the defendant to orally amend its answer at the summary judgment hearing to include a statute of limitations defense, and then ruling in favor of the defendant on that ground). But the district court may allow a statute of limitations defense to be asserted for the first time on a motion for summary judgment, even if not properly pleaded. *Oreck v. Harvey Homes, Inc.*, 602 N.W.2d 424, 427–28 (Minn.App.1999), *review denied* (Minn. Jan. 25, 2000).

First National's answer contains two recitations of applicable defenses. Defense two states, "The claims asserted in the Complaint are barred or reduced by contractual limitations and/or statutory limitations." In addition, defense seven states, "The claims asserted in the Complaint are barred by statute." Although likely boilerplate pleading provisions, they gave Bradley some notice prior to the summary judgment hearing that First National had a statute of limitations defense. As a result, Bradley's position is distinguishable from the plaintiff in *Rhee. See* 617 N.W.2d at 621.

But even if the consideration of the statute of limitations argument was improper, Bradley was not prejudiced by such consideration in the sense that she was treated fundamentally unfairly. Both First National's motion for summary judgment and Bradley's opposition aggressively disputed whether the UCC or UFA applied to Bradley's claim. That First National eventually argued for the UCC statute of limitations, especially where it contended that other substantive provisions of the UCC were determinative, should not have been a surprise to Bradley. Furthermore, it is unclear what additional arguments Bradley would make even with more time, as she had already vigorously contested the application of the UCC. Under the circumstances, we conclude that because Bradley has had full opportunity to address this issue, the district court did not abuse its discretion in considering First National's defense of statute of limitations.

## DECISION

In sum, we hold that Bradley's breach-of-fiduciary-duty claim is governed by the

UCC's three-year statute of limitations. Further, application of the UCC's comprehensive liability scheme preempts Bradley's common law claims. Finally, the district court did not abuse its discretion by considering these claims on summary judgment.

**Affirmed.**